Wisconsin Power & Light Company, Appellant, vs. Industrial Commission and another, Respondents.

*December 10, 1954—January 11, 1955.*

For the appellant there was a brief by *Schubring, Ryan, Petersen & Sutherland* of Madison, and oral argument by *R. J. Sutherland*.

For the respondent Industrial Commission there was a brief by the *Attorney General* and *Mortimer Levitan,* assistant attorney general, and oral argument by *Mr. Levitan*.

For the respondent Patricia Richardson there was a brief and oral argument by *Jerold E. Murphy* of Fond du Lac.

BROWN, J. To support an award of benefits under the Workmen's Compensation Act it is requisite that the employee shall have sustained an injury at a time when he is performing service growing out of and incidental to his employment and the accident or disease causing injury arises out of his employment. Sec. 102.03 (1) (a), (c), and (e), Stats.

If there is any credible evidence to support the findings of the commission they cannot be disturbed. *Milwaukee E. R. & L. Co. v. Industrial Comm.* (1936), 222 Wis. 111, 267 N. W. 62.

Bernard Richardson suffered a cerebral hemorrhage on January 17, 1952, while he was assisting other employees of Wisconsin Power & Light Company in erecting a pole to carry a transmission line. This produced a severe headache which disabled him for several hours. He did not see a doctor but took some aspirin pills and lay down till the headache went away. The next day he worked with the crew of which he was a member without incident but on the 19th, while he was pulling on a rope to hoist a conductor carrying a wire to its place on a pole, he had a second cerebral hemorrhage. This was indicated by a severe headache and a stiff neck followed by nausea. This time he was hospitalized, first at Waupaca, then at Fond du Lac, where he was treated by Dr. McCullough, and then at Neenah, where he came under the care of Dr. Quade, a specialist in neurosurgery. He died in the Neenah hospital on February 9, 1952, from a third cerebral hemorrhage.

There is no doubt that the first two cerebral hemorrhages occurred while he was at work for his employer, but the employer contends that the manner of their occurrence does not constitute an industrial accident.

The medical testimony was that the hemorrhages were caused by the rupture of an aneurysm in the cerebral blood vessel. The aneurysm itself was congenital and was subject to rupture whenever the blood pressure reached a higher point than the aneurysm could withstand. Dr. Quade testified:

"Now, the thing that will make a blood vessel rupture is anything that will increase blood pressure, and of course anyone in the act of pushing and straining obviously increased pressure; and, in the act of so doing, when you suddenly get a headache and become sick and nauseated, with pain such as described here, your obvious conclusion is an aneurysm has ruptured.

"The physical strain, of course, was a factor that ruptured this weak spot in the blood vessel. That is the only reason-

able construction that one could put on that. The only point that I might add, of course—that is the evidence we have of this original rupture on this first occasion. Of course, then, following that, then the patient is in real jeopardy, because he has had the tears, and his headache stops later in the evening about eleven o'clock or so—will indicate that at least the irritative factors were taken care of, and that Nature had apparently been able to seal this opening for the time being, and, of course, then our whole future would rest on the ability of that spot that had ruptured remaining sealed. Of course, two days later he pulls, and then he gets a more serious involvement. Then that particular lesion—I mean the break is there, and he gets another episode, which becomes more serious, more bleeding, and it puts him in still more jeopardy, until the point where actually his life is hanging on a thread and, of course, finally the final episode—the whole thing let loose. We get that progressive picture of these aneurysms which are bleeding. Once you get the thing started, it is in the hands of the gods. It is really rough.

"I am of this opinion: That there is—considering all these facts that have been brought out—that there is every reasonable medical reason to believe that the initial rupture occurred on this Thursday when he pushed on the pole. All the evidence points in that direction."

Dr. Quade also testified that increased blood pressure resulted from mental or emotional stresses as well as from physical activity.

A fellow employee who was working with Richardson in placing the pole on January 17th testified that Richardson complained of "an awful headache" and quit work right after the pole was placed. Others in the construction crew testified that Richardson's part of the job was to guide the butt of the pole into the hole and that this was heavy work,—"bull work" one of them called it. There was also evidence that to raise the conductor carrying the wire required strong pulling. Appellant submits that there is no testimony that Richardson was exerting himself at the moment when either headache began. His companions testified that he complained of pain

at a time when he was engaged in hard, physical labor for his employer of the sort which the medical experts testified would raise the blood pressure. The aneurysm being present, its rupture was a probable and natural result of such an increase. We consider the testimony sufficiently connects the rupture with his exertions at work. That such an occurrence is an accident within the meaning of the Workmen's Compensation Act seems to us to have been settled by *Bystrom Brothers v. Jacobson* (1916), 162 Wis. 180, 155 N. W. 919, which established the principle that a physical strain which produces an injurious physical result constitutes an accident in the sense that that term is used in the act. In *Malleable Iron Range Co. v. Industrial Comm.* (1934), 215 Wis. 560, 255 N. W. 123, the employee had an advanced case of arteriosclerosis which predisposed him to the rupture of an artery. An artery did burst while he was assisting others to pull a loaded truck and a resulting blood clot reached his lung and caused his death. We held this to be an accident as the word is used in the Workmen's Compensation Act. That case, medically and legally is so similar to the one now before us that we feel obliged now to reach a similar conclusion. According to the most recent text to which we have been referred, we are not alone in this view:

"A clear majority of jurisdictions now hold that when usual exertion leads to something actually breaking, herniating, or letting go, with an obvious sudden mechanical or structural change in the body, the injury is accidental. So we find an overwhelming majority compensating for hernia, and a substantial majority compensating for cerebral hemorrhage, arterial or blood-vessel rupture, ruptured aneurysm, apoplexy, ruptured appendix, herniated intervertebral disc, stomach rupture, dislocated kidney, dislocated cervical cord, and detached retina, even when the exertion or conditions producing the change were not out of line with the ordinary duties of the job." 1 Larson, Law of Workmen's Compensation (1952), p. 519, sec. 38.20.

We consider that the findings of which appellant complains are supported by competent evidence and the learned circuit court properly confirmed the commission's award.

*By the Court.*—Judgment affirmed.

CURRIE, J., took no part.