WISCONSIN APPLETON COMPANY and another, Appellants,
vs. INDUSTRIAL COMMISSION and another, Respondents.

*February 11—April 5, 1955.*

313

314

315

316

For the appellants there were briefs by *Stroud, Stebbins, Wingert & Stroud* of Madison, and oral argument by *Byron H. Stebbins.*

For the respondent Industrial Commission there was a brief by the *Attorney General* and *Mortimer Levitan,* assistant attorney general, and oral argument by *Mr. Levitan.*

For the respondent Albert Pauline there was oral argument by *Robert E. Gratz* of Milwaukee.

STEINLE, J.  Appellants' first contention is that the award must be set aside for the reason that the Industrial Commission failed to make a finding that Albert Pauline's injury was caused by either accident or disease. It is appellants' position that the commission's finding that Pauline's injury "was caused by his work" is not a finding that his injury was caused by either "accident or disease" as required by statute.

The particular findings of fact challenged for their sufficiency here, read: "That on October 22, 1951, applicant sustained injury to his back; that said injury was caused by his work for respondent; that at the time of his injury he was performing service for the respondent in the course of his employment as a molder." In the commission's written order which contains the "Findings of Fact" and the "Interlocutory Order," appears a prefatory statement which reads in part: "The principal question in issue is whether or not applicant sustained *accidental* [emphasis supplied] injury while performing service growing out of and incidental to his employment with the respondent, and if the condition resulting in his disability arose out of said employment."

Sec. 102.03 (1), Stats., reads in part:

"(1) Liability under this chapter shall exist against an employer only where the following conditions concur:

".'(a) Where the employee sustains an injury.

"(b) Where, at the time of the injury, both the employer and employee are subject to the provisions of this chapter.

"(c) Where, at the time of the injury, the employee is performing service growing out of and incidental to his employment. . . .

"(d) Where the injury is not intentionally self-inflicted.

"(e) Where the accident or disease causing injury arises out of his employment."

Sec. 102.01 (2), Stats., provides in part:

". . . 'injury' is mental or physical harm to an employee caused by accident or disease."

Manifestly, a finding by the commission that there was an injury to an employee, means, under the definition expressed in sec. 102.01 (2), Stats., that mental or physical harm caused by accident or disease had come to the employee. Sec. 102.03 (1) indicates, that in order that liability attach, there must be evidence that the mental or physical harm caused by accident or disease arose out of the employment. We are of the opinion that a finding that injury was caused by work is the equivalent of a finding that accident or disease causing injury arose out of the employment. The commission is required to make findings only as to ultimate facts. *Van Pool v. Industrial Comm.* (1954), 267 Wis. 292, 64 N. W. (2d) 813. It is our view that in the instant matter the prefatory statement immediately preceding the findings of fact in the commission's order must be considered as a part of the ultimate facts found. When including that reference in a consideration of the ultimate facts, it is clear that the commission determined that the injury was caused by accident in the course of employment. We can find no merit to appellants' contention in this regard.

Appellants next contend that in the commission's determination of the issues here, it had no right to consider the written report of Dr. Oberfeld. They maintain that sec.

102.17 (1) (as), Stats.,[1] is discriminatory and denies due process and the equal protection of the laws in that it fails to afford to employers the same right accorded to employees in having reports of their physicians treated as *prima facie* evidence.

While a grave constitutional question,—one that gives much concern,—is raised, it is considered that we need not determine it in this cause for the reason that its determination is not essential for a disposition of the case. It appears that exclusive of the report of Dr. Oberfeld, there is ample credible evidence in the record to sustain the findings of the commission. The medical evidence offered by the employer, coupled with the testimony of the applicant, supports the findings.

It is undisputed that Pauline suffered pain and became disabled on October 22, 1951, when he was engaged in hard, physical labor for his employer. According to Dr. Johnson's testimony Pauline had a degenerating disc lesion which had been developing over a period of time and which had reached a point where it became acute with sciatic nerve-root radiation into the right leg. The nature of Pauline's work was responsible for the degenerating condition. The type of work that he was doing was a factor in his back difficulty. The likelihood of his developing an acute disc syndrome, if he had not been doing heavy work, would have been less. On October 22, 1951, when Pauline could not straighten out he sustained an "acute episode." This was an end result of repeated strains and stresses on his back. His bending and his lifting of weights in the usual way brought on the "acute episode." A herniated disc was removed at the hospital.

---

[1] Sec. 102.17 (1) (as), Stats., in so far as applicable, provides: "The contents of verified medical and surgical reports, by physicians and surgeons licensed in, and practicing in, Wisconsin, presented by claimants for compensation shall constitute *prima facie* evidence as to the matter contained therein, subject to such rules and such limitations as the commission may prescribe."

This testimony, together with that of Pauline relative to his experience, was sufficient to sustain the finding that the disability was the result of an accident. The commission was warranted in determining that Pauline's condition arose from his work with this employer, notwithstanding that the incident of October 22, 1951, was but a manifestation of a situation which had occurred previously. Prior to the injurious physical result of the incident of October 22, 1951, there had been no disability. The herniated disc resulted from repeated stress and strain caused by Pauline's work. The "acute episode" of October 22, 1951, was the end result. The fact that the pains appeared after setting the mold on the floor, was not inconsistent with a causal relationship between the work and the injury.

Appellants contend that no accident occurred because the disabling pain was experienced while the applicant was doing his usual work. Pauline's work on October 22, 1951, was the kind that he had been engaged in for over a rather extended period for this employer, and was of a heavy type. It it not essential that the exertion producing the disability be out of line with the ordinary duties of the job in order that the disability be compensable. In *Wisconsin Power & Light Co. v. Industrial Comm.* (1955), 268 Wis. 513, 68 N. W. (2d) 44, the deceased experienced a severe headache while assisting fellow employees in erecting a telephone pole. He left his work and went home and rested until the headache went away. On the next day he worked without incident, but on the following day again sustained a headache followed by nausea. He died about three weeks later. His condition was diagnosed as a ruptured aneurysm. The employer contended that the manner of the occurrence did not constitute an industrial accident. This court held that a physical strain which produces an injurious physical result constitutes an "accident" in the sense that such term is used in the Workmen's Compensation Act. In part, it was said (p. 517):

"That such an occurrence is an accident within the meaning of the Workmen's Compensation Act seems to us to have been settled by *Bystrom Brothers v. Jacobson* (1916), 162 Wis. 180, 155 N. W. 919, which established the principle that a physical strain which produces an injurious physical result constitutes an accident in the sense that that term is used in the act. In *Malleable Iron Range Co. v. Industrial Comm.* (1934), 215 Wis. 560, 255 N. W. 123, the employee had an advanced case of arteriosclerosis which predisposed him to the rupture of an artery. An artery did burst while he was assisting others to pull a loaded truck and a resulting blood clot reached his lung and caused his death. We held this to be an accident as the word is used in the Workmen's Compensation Act. That case, medically and legally is so similar to the one now before us that we feel obliged now to reach a similar conclusion. According to the most recent text to which we have been referred, we are not alone in this view:

" 'A clear majority of jurisdictions now hold that when *usual exertion* [italics supplied] leads to something actually breaking, herniating, or letting go, with an obvious sudden mechanical or structural change in the body, the injury is accidental. So we find an overwhelming majority compensating for hernia, and a substantial majority compensating for cerebral hemorrhage, arterial or blood-vessel rupture, ruptured aneurysm, apoplexy, ruptured appendix, herniated intervertebral disc, stomach rupture, dislocated kidney, dislocated cervical cord, and detached retina, even when the exertion or conditions producing the change were not out of line with the ordinary duties of the job.' 1 Larson, Law of Workmen's Compensation (1952), p. 519, sec. 38.20."

It appearing conclusively from Dr. Johnson's testimony that Pauline's herniated disc was the result of exertion in his work; and further, since there is ample evidence of record to connect the condition with the work performed by him on behalf of this employer; and further, since the disability which arose on October 22, 1951, resulted from exertion while performing heavy work for the employer and was the end result of a condition which sprang from his employ-

ment, we are obliged to determine that the evidence supports the findings of the commission, and that the judgment of the lower court must be affirmed.

*By the Court.*—Judgment affirmed.