VAN VALIN, Appellant, v. INDUSTRIAL COMMISSION and others, Respondents.

*December 1, 1961—January 9, 1962.*

For the appellant there was a brief and oral argument by *Charles Saggio* of Milwaukee.

For the respondent Industrial Commission the cause was argued by *Mortimer Levitan,* assistant attorney general, with whom on the brief was *John W. Reynolds,* attorney general.

DIETERICH, J. The sole question for determination is whether there is any credible evidence to sustain the finding of the Industrial Commission that the appellant, Sylvia Van Valin, did not sustain an injury to her neck and arm in the course of and arising out of her employment.

It is an elementary principle of law that the applicant has the burden of proof in a workmen's compensation case, and if the evidence before the Industrial Commission is sufficient to raise in the mind of the commission a legitimate doubt as to the existence of facts necessary and essential to establish a claim for compensation, it becomes the duty of the commission to deny the application on the ground that the claimant did not sustain his burden of proof. *Nielsen v. Industrial Comm.* (1961), 14 Wis. (2d) 112, 109 N. W. (2d) 483; *Fitz v. Industrial Comm.* (1960), 10 Wis. (2d) 202, 102 N. W. (2d) 93; and *Johnston v. Industrial Comm.* (1958), 3 Wis. (2d) 173, 87 N. W. (2d) 822.

It is undisputed that the claimant, Sylvia Van Valin, suffered a herniation of an intervertebral disc. The question before the commission was whether or not the herniation occurred while Sylvia Van Valin was performing service growing out of and incidental to her employment, and as a result of some exertion, either usual or unusual, in the performance of her duties. *Brown v. Industrial Comm.* (1960), 9 Wis. (2d) 555, 101 N. W. (2d) 788. The burden of proof rested upon the applicant, Sylvia Van Valin, of convincing the commission to a reasonable certainty by a preponderance of the evidence that the herniation of the disc occurred during the course of her employment.

During the course of her employment by Keystone, Sylvia Van Valin was required to operate several different types of machines, usually punch presses.

At one machine Sylvia Van Valin operated she was required to use pliers to hold light pieces of metal. Another machine she operated was a large punch press. The punch press which Sylvia Van Valin operated used band steel about five inches wide, from a 500-pound roll. This roll of steel rested in a cradle between two clamps some distance from the punch press. The cradle was equipped with rollers and when an electric switch was activated the cradle would feed steel from the cradle to the punch press. However, if the clamps holding the roll were too tight the steel would not unroll at all; conversely, if the clamps were too loose the steel would unroll too fast and fall upon the floor. The switch was on the cradle and the operator of the punch press would activate the switch by pulling on a piece of twine or rope which had been fastened to the switch and extended to the punch press where the twine was also fastened.

Sylvia Van Valin testified that on July 23, 1959, the roll of steel was clamped too tightly and would not unwind. She loosened the clamps and then pulled on the twine to activate the rollers. When the steel refused to unroll she pulled harder whereupon she got a severe pain in the back of her neck, both arms, and back of her leg. She broke into a sweat and got chills and became nauseated. Sylvia Van Valin testified further that the foreman brought her a stool to sit on and later he transferred her to another press where the work was lighter. She was unable to continue working, however, and went home. She later testified that at the time she felt that she was sick and did not associate her illness with the fact that she pulled on the twine with all her strength.

The following morning, July 24th, Sylvia Van Valin did not report for work, but went to her employer's office to explain her condition and that she was unable to work. She then saw the company doctor, Dr. H. W. Granzeau. Sylvia

Van Valin told him that the swelling in her hand had begun on July 21, 1959, and that such swelling was caused by the use of the pliers in her work. At no time did she tell him of the alleged incident of July 23, 1959. Dr. Granzeau hospitalized her from August 7 to August 17, 1959. Mrs. Van Valin was put in traction for treatment of hypertrophic arthritis which had been revealed by his examination, including X rays.

On August 28, 1959, Sylvia Van Valin saw Dr. J. L. Buhl, her personal physician. The record discloses that she did not give him any history of the alleged injury until sometime during the year of 1960. Dr. Buhl referred her to Dr. David Cleveland, a neurological surgeon. The employee saw Dr. Cleveland on September 2, 1959, and was admitted to Milwaukee Hospital on September 3, 1959. Dr. Cleveland performed surgery on September 8th, when he found fresh fragments and a ruptured disc. Based upon this finding, together with the history of the alleged incident on July 23, 1959, of which Sylvia Van Valin informed him on December 11, 1959, it was his opinion that the pulling incident was the probable cause of the herniation.

When Sylvia Van Valin was admitted to the hospital on September 3d, she gave a history that for eight months prior thereto she had neck pain with radiation into the right arm. Based upon this history, plus X rays, and an examination of Sylvia Van Valin, Dr. Harry P. Maxwell, a neurological surgeon, testified for the respondent and said that in his opinion there is no direct or indirect relationship between her employment and the condition for which she was treated.

In a statement to an insurance adjuster on August 4, 1959, Sylvia Van Valin said that Dr. Buhl had been treating her since November or December of 1958, for swelling of the hands and radiation of pain from the neck into the

arm. She said that the difficulty had been cleared up by injections by Dr. Buhl but that she had a recurrence in May of 1959. She told the adjuster that she had become sick at work on July 23, 1959, and that she had not sustained an injury of any sort at work.

The commission found that the applicant's complaints were due to other causes wholly unrelated to her employment, and ordered the application to be dismissed. The commission made reference to three significant factors in the record. One, that the applicant gave no history of her injury to Dr. Buhl until after her application for compensation was filed in 1960, and that she never related the alleged incident to Dr. Granzeau. Second, that in her statement to the insurance carrier she denied ever sustaining any injury while at work. Third, that at the time she was admitted to Milwaukee Hospital on September 3, 1959, she gave a history that for eight months' prior thereto she had neck pain with radiation into the right arm.

On the basis of the eight months' prior history of neck pain, together with the applicant's other medical history, Dr. Maxwell stated that in his opinion the herniation was probably not caused by the exertion Sylvia Van Valin described as the cause of her injury. This testimony was in conflict with that offered by Dr. Cleveland. Where medical testimony is in conflict, the weight thereof and the credibility of the witnesses is for the commission to determine. *Fitz v. Industrial Comm., supra; Unruh v. Industrial Comm.* (1959), 8 Wis. (2d) 394, 99 N. W. (2d) 182, and *Molinaro v. Industrial Comm.* (1956), 273 Wis. 129, 76 N. W. (2d) 547.

The rule is that this court will affirm a finding of fact of the commission, unless such finding is clearly against all the credible testimony or so inherently unreasonable as not

to be entitled to any weight. See *Fitz v. Industrial Comm., supra,* and *Tuohy v. Industrial Comm.* (1958), 5 Wis. (2d) 576, 93 N. W. (2d) 344.

The commission was the sole judge of the credibility of the witnesses, and on the basis of this record there is credible evidence to support the commission's findings.

*By the Court.*—Judgment affirmed.

GORDON, J., took no part.