DETTER, Appellant, v. DEPARTMENT OF INDUSTRY, LABOR & HUMAN RELATIONS and others, Respondents.

*No. 130. Argued September 30, 1968.—Decided October 29, 1968.*
(Also reported in 161 N. W. 2d 873.)

For the appellant there was a brief by *Habush, Gillick, Habush & Davis* of Milwaukee, and oral argument by *Lawrence D. Gillick.*

For the respondent Department of Industry, Labor & Human Relations the cause was argued by *Gordon Samuelsen,* assistant attorney general, with whom on the brief was *Bronson C. La Follette,* attorney general.

For the respondents Gisholt Corporation and Employers Mutual Liability Insurance Company there was a brief

by *Hart, Wightman & Thurow* of Madison, and oral argument by *Walter D. Thurow.*

HEFFERNAN, J. It was the finding of the commission:

"That the applicant suffered a spontaneous herniation of an intervertebral disc while at work; that his work did not cause the herniation, but was merely incidental therewith; that the applicant only turned to the side to reach laterally and to the rear for a seven to eight pound drill; that this was not a competent producing cause for the herniation; that the applicant was 64 years of age at the time of his difficulty, with degenerative changes of the spine and a history of prior back difficulty; that the applicant did not sustain accidental injury arising out of his employment."

We have on numerous occasions stated the standard that this court will apply in reviewing a finding of fact by the commission. In the recent case of *Lewellyn v. ILHR Dept.* (1968), 38 Wis. 2d 43, 155 N. W. 2d 678, we quoted with approval the standard used in *Schuh v. Industrial Comm.* (1958), 2 Wis. 2d 611, 614, 87 N. W. 2d 256, that, "Findings of fact by the commission must stand in the reviewing courts if there is any credible evidence to support them."

We have also consistently held that, when testimony is in dispute and there is some credible evidence to support award of compensation and some evidence that will support a denial of compensation, the commission's findings on the basis of such disputed evidence must stand. In *Borden Co. v. Industrial Comm.* (1958), 2 Wis. 2d 619, 622, 87 N. W. 2d 261, this court said:

"That testimony might have justified a contrary finding, but it is the function of the Industrial Commission and the examiners to evaluate medical testimony and determine its weight, and their findings on disputed medical testimony are conclusive."

Only when the facts are undisputed and but one reasonable inference can be drawn from those facts is it

within the province of this court to overrule contrary inferences made by the commission. We stated in *Brown v. Industrial Comm.* (1960), 9 Wis. 2d 555, 569, 101 N. W. 2d 788, that, under those circumstances, ". . . a question of law and not one of fact is presented."

Accordingly, the finding of the commission will not be set aside if the facts are disputed or if more than one reasonable inference can be drawn from undisputed facts and the commission draws an inference that is reasonable.

If the findings of the commission are based upon disputed facts, this court upon review will not substitute its findings or facts for those of the commission, even though we were to conclude that the commission was in error.

Accordingly, in the instant case the findings and order of the commission are to be affirmed unless the facts are undisputed and but one reasonable inference can be drawn from the facts and that inference is contrary to the inference or conclusion drawn by the commission.

*Are the essential facts required to support*
*a compensation award in dispute*

To answer this key question, a review of the undisputed evidence, as well as of that which is allegedly disputed, is necessary.

It is undisputed that the claimant, Paul Detter, age sixty-four, was a drill press operator for the Gisholt Corporation on April 30, 1965. Detter was working at his press in a standing position. The interchangeable replacement drills weighing seven to eight pounds were lying in a rack to his right and to his rear at a height approximately that of his armpit. Detter reached for a drill that was the last drill in the rack, *i.e.*, the farthest to his back and to his right. To reach this drill, Detter took one step to the right, reached out extending his arm

full length to the right, and turned or twisted his body backwards to the right until he could reach and lift the drill from the rack. As he turned a quarter way round toward the drill press, he felt an acute pain in the left center of his back just below his belt line. He was unable to finish his work that day and left the shop. He saw his physician, who diagnosed the ailment as a herniated disc located between the fourth and fifth lumbar vertebrae. The disc particles were surgically removed on June 3, 1965, by Dr. Brodhead.

All of the facts recited above are undisputed. The examiner and the commission found that the intervertebral disc herniated while Detter was at work and at the time he was turning back to the press with the needed drill assembly in his right hand. There is absolutely no dispute that at the time of the herniation Detter was engaged in an activity that was necessary and incidental to his employment as a drill press operator.

If there is any dispute in the evidence, it is in the evidence of the two medical witnesses, one of whom, Dr. W. T. Brodhead, submitted a report for the appellant, and the other, Dr. H. W. Mahaffey, testified for the respondent. Dr. Brodhead was the treating physician. He stated in a report to the commission that: "Patient was working and reached for a drill and upon lifting it over to the machine, he hurt his back." It was his conclusion that the incident was the cause of the protrusion of the intervertebral disc.

Dr. Mahaffey did not examine the applicant, but testified on the basis of hearing the testimony of others and from an examination of the medical records. He was asked if, on the basis of the testimony of Detter, he had an opinion as to what happened and as to the cause of Detter's condition. He answered stating:

"That Mr. Detter had a herniation of a disc between the lumbar 4 and 5 vertebrae; that the disc herniation occurred while he was working, and that in my opinion

the force of some seven to eight pounds would not be sufficient to constitute an injury as a relationship—as a factor in producing the herniation."

He was then asked:

"*Q.* Will you elaborate more on that, Doctor, and tell us why you are of that opinion? *A.* That this would not in itself exert sufficient force to be a factor in producing a herniation: *that the herniation has occurred because of the turning* and was coincidental to the fact that he was at work at the time when it occurred." (Emphasis supplied.)

On cross-examination Dr. Mahaffey acknowledged that the lifting required effort. He also acknowledged that less weight would be required to produce a herniation if, as testified by Detter, he was twisting as well as lifting. Dr. Mahaffey also acknowledged that Detter would probably not have developed the symptoms had he not been turning and reaching backward for the drill assembly. In response to counsel's question, he also acknowledged that whether or not Detter would have developed a herniation had it not been for this incident would be speculation. However, Dr. Mahaffey pointed out that the fact that such a minor incident produced the herniation would make it less speculative.

In the course of his direct testimony Dr. Mahaffey stated that he was of the opinion that the condition Detter had did not arise out of the employment at Gisholt.

A review of all of Dr. Mahaffey's testimony inexorably leads to the conclusion that, when expressing his opinion as to whether the injury arose out of the employment, he merely expressed the opinion that the lifting was not the causal factor. He was of the opinion that only lifting was required as a part of the employment. He apparently did not include the turning process as work, for although he stated that the injury did not arise out of the employment, he testified, "that the herniation has occurred because of the turning."

It is clear that the turning or twisting motion was a part of Detter's job. It is apparent, when both doctors submitted evidence that the herniation was caused by the turning to get the drill, that both were testifying that the motion required by the employment caused the injury. Thus there is no dispute that the injury was caused by the employment.

We see no support for the commission's finding that the herniation was "spontaneous." A careful search of the record fails to reveal any testimony to that effect. If we are to assume that by the use of the word, "spontaneous," was meant that the disc was likely to herniate without the employment effort, Dr. Mahaffey said that the symptoms probably would not have developed if Detter had not been "turning and reaching backward to lift up th[e] assembly." He also termed it "speculation" to conclude that the herniation would have developed in the absence of the work incident.

We are thus constrained to conclude that the facts are not in dispute and that the undisputed facts support not the inference that the herniation was spontaneous but, rather, the clear finding that the injury arose out of the employment, *i.e.*, the turning or twisting required by the job.

It is true that Dr. Mahaffey specifically stated that the injury did not arise out of the employment, but it is equally true that the only activity Dr. Mahaffey considered employment was the lifting itself. He concluded that the lifting did not cause the herniation but specifically stated that the turning, equally work-related, did. Under these circumstances we conclude that to apply Dr. Mahaffey's opinion that the work did not cause the injury is contrary to the clear inferences that are to be drawn from his own testimony. It is in effect an answer taken out of context for it ignores his clear opinion that the turning was the cause of the herniation. We conclude that Dr. Mahaffey's response comes within the intent of

*Wagner v. Industrial Comm.* (1956), 273 Wis. 553, 565, 79 N. W. 2d 264, 80 N. W. 2d 456, in which we said that statements which seemingly conflicted with prior testimony but which in fact were taken out of context and were completely explained by other testimony of the same doctors could not be used to sustain the findings of the commission. In the instant case, to apply Dr. Mahaffey's isolated statement is to ignore that portion of his testimony wherein he explained what part of the activity did not cause the injury (the lifting) and what part did (the turning). Read as a whole, his testimony is not conflicting.

On the basis of the undisputed testimony it is obvious that this case falls within rule (1) enunciated by *Lewellyn v. ILHR Dept., supra*, page 58:

"(1) If there is a definite 'breakage' (a letting go, a structural change, etc., as described by Professor Larson), while the employee is engaged in usual or normal activity [3] on the job, and there is a relationship between the breakage and the effort exerted or motion involved, the injury is compensable regardless of whether or not the employee's condition was preexisting and regardless of whether or not there is evidence of prior trouble. [Citing cases.]

---

[3] 'Usual' and 'normal' are used . . . in the sense of exertions of normal nonemployment life."

It should be pointed out that under this test the "breakage" constitutes an accident in the sense used in sec. 102.03 (1) (e), Stats., as explained in *Bystrom Brothers v. Jacobson* (1916), 162 Wis. 180, 183, 155 N. W. 919, where this court quoted approvingly from *Fenton v. Thorley*, 89 L. T. Rep. 314:

"If a man, in lifting a weight, or trying to move something not easily moved, were to strain a muscle, or rick his back, or rupture himself, the mishap, in ordinary parlance, would be described as accidental."

Since *Bystrom,* of course, the qualification of great effort, expressed therein as "trying to move something not easily moved," has been found to be a nonessential to compensation. We stated in *Brown, supra,* pages 570, 571:

"There is no burden upon the employee to show that the exertion being put forth at the time of the herniation was in any way unusual to his employment. . . . If the herniation occurs as the result of and while the employee is putting forth bending exertion in the normal course of his employment, it is obvious that the bending exertion of the employee was sufficient to herniate the diseased disc, and it is immaterial as to whether or not he was doing anything unusual." [2]

The status of the Wisconsin Workmen's Compensation Law as it relates to claims for disabilities resulting from disc injuries was summarized by Mr. Chief Justice GEORGE CURRIE. He stated:

". . . that if the ruptured disc occurs as a result of the employee performing some act on the job required by, or incidental to, his employment, the resulting disability will be found to have been due to accident growing out of and incidental to such employment. It is not necessary that there be anything unusual or extraordinary in the character of the act that causes the protrusion. Even though a degenerative disc condition has progressed to the point where, if the employee had bent over at home to

---

[2] In the instant case we have not overlooked the testimony of Dr. Mahaffey in regard to a prior degeneration of disc tissue. In light of the test of *Lewellyn,* prior weakness is irrelevant if "breakage" is related to work activity.

"An employer takes an employee 'as is' and if he is suffering from disease predisposing to 'breakage' and an exertion required by the employment causes the 'breakage' at the moment of exertion, the employer is liable under the act." *Brown v. Industrial Comm., supra,* page 570, citing *Wisconsin Appleton Co. v. Industrial Comm.* (1955), 269 Wis. 312, 322, 69 N. W. 2d 433, and *M. & M. Realty Co. v. Industrial Comm.* (1954), 267 Wis. 52, 63, 64 N. W. 2d 413.

tie his shoelace a disc protrusion might have resulted, this is immaterial. What is material is that some act on the job did trigger the herniation. Larson, in his work on Workmen's Compensation Law, states that this same principle has been adopted by a majority of the courts of other jurisdictions which have been faced with the problem.

"This general principle is closely akin to the 'positional risk' doctrine which our court has adopted in workmen's compensation cases. Under that doctrine an accident is held to arise out of the employment even though of a type which could have occurred while the employee was at home, or pursuing some recreational activity, if something connected with the employment is a contributing factor, or makes the accident more likely to happen." Currie, *Supreme Court Decisions Relating to Industrial Back Injuries* (February 1964), 37 Wis. Bar Bulletin 11, 12.

On the basis of the undisputed facts it is apparent that Detter sustained a herniated disc while in the employ of the Gisholt Corporation and that there was a relationship between the herniation and the turning motion involved in his employment. Under these circumstances the injury is compensable.

*By the Court.*—Judgment reversed, cause remanded with directions to enter judgment consistent with this opinion.