SCHROEDER, Appellant, v. DEPARTMENT OF INDUSTRY, LABOR & HUMAN RELATIONS and others, Respondents.*

*No. 266. Argued May 7, 1969.—Decided June 3, 1969.*
(Also reported in 168 N. W. 2d 144.)

* Motion for rehearing denied, without costs, on September 8, 1969.

For the appellant there was a brief by *Alvin H. Eisenberg*, attorney, and *Edwin A. Star* of counsel, both of Milwaukee, and oral argument by *Mr. Eisenberg*.

For the respondent Department of Industry, Labor & Human Relations the cause was argued by *Gordon Samuelsen*, assistant attorney general, with whom on the brief was *Robert W. Warren*, attorney general.

For the respondents Motor Castings Company and Employers Mutual Liability Insurance Company there was a brief by *Hart, Wightman & Thurow* and *Walter D. Thurow*, all of Madison, and oral argument by *Walter D. Thurow*.

CONNOR T. HANSEN, J. The sole issue on this appeal is whether there is credible evidence to sustain the ILHR Department's findings "that the back pain was not caused by her activity in bending and picking up the cores on August 9, 1965, nor by the sum total of her daily employment activities from April 1965 to August 9, 1965; [and] that applicant did not sustain injury arising out of her employment."

Mrs. Schroeder's employment duties with the respondent involved handling cores. (The record does not indicate what a core is.) She would bend to pick up four or five cores in her arms from a skid, return to the erect position, and place the cores on her worktable. Four or five cores weigh a total of not more than five pounds. After placing the cores on the worktable she would fill any holes in the cores with mud, bend over and dip one core at a time in a solution in a barrel, arise, shake the core off, move over, bend to place the core on the work-

table, return to the erect position, and begin the procedure all over. In the course of a day she handled about 400 cores.

On August 9, 1965, Mrs. Schroeder arrived at work at 7 a. m. and at 8:30 a. m., while bending and picking up cores from the skid, she felt a sharp pain in her lower back area. She went to the company nurse twice but returned to her job and worked the rest of the day.

The next day she informed respondent Motor Castings that she was not feeling well and would not be at work. She never returned to work. Four days after the accident she saw her doctor, Dr. Dricken. Dr. Dricken had Mrs. Schroeder enter St. Luke's hospital thirty-two days after the "accident" (September 11, 1965). At all times that Mrs. Schroeder was in the hospital she was under the care of Dr. Konstantine S. George, an orthopedic surgeon. She remained in the hospital until October 1st.

Because of unsatisfactory improvement and recurrence of her complaints and symptoms, she was readmitted to the hospital on January 20, 1966. She was given conservative treatment, including traction, but her condition failed to improve. She was then given a myelogram which determined that she had a herniated disc at the L5–S1, and surgery was performed on February 2, 1966. An extruded nucleus pulposus (a disc) was removed and a spinal fusion was performed.

The record reveals that the doctors disagreed on the main issue—was the injury a result of her work?

Dr. Shapiro, an orthopedic surgeon who examined Mrs. Schroeder for an hour or an hour-and-a-half on May 23, 1967, and took a history and made a physical examination, testified "that the patient's disability and need for surgery was in no way related to an industrial injury."

Dr. George, who treated Mrs. Schroeder for a back disorder in 1961, treated her in September, 1965, when she entered the hospital after the "accident," and performed the surgery on her in February, 1966, testified "that this so-called incident on that day at work was the

cause of her disc injury, which gradually progressed to become a herniation and caused the pressure on the nerve root." Dr. George indicated that he had no information that would indicate in any manner that her condition resulted from anything other than her employment. He concluded that Mrs. Schroeder has a 15 percent permanent disability to her body.

The appellant contends that there is ample credible evidence by way of Mrs. Schroeder's own testimony and the testimony and reports of Dr. George to establish that Mrs. Schroeder sustained injury arising out of her employment.

It is not the function of this court to determine reasonable inferences that could have been drawn, but rather to determine whether the findings of fact made by the ILHR Department are supported by credible evidence. *Unruh v. Industrial Comm.* (1959), 8 Wis. 2d 394, 398, 99 N. W. 2d 182.

In *Lewellyn v. ILHR Department* (1968), 38 Wis. 2d 43, 51, 52, 155 N. W. 2d 678, a case also dealing with an alleged industrial back injury, the court summarized much of the law as follows:

" 'If credible evidence exists in support of the commission's findings, such findings are conclusive. . . .

" ' "The question is not whether there is credible evidence in the record to sustain a finding the commission did not make, but whether there is any credible evidence to sustain the finding the commission did make." ' "

" 'It is an elementary principle of law that the applicant has the burden of proof in a workmen's compensation case, and if the evidence before the Industrial Commission is sufficient to raise in the mind of the commission a legitimate doubt as to the existence of facts necessary and essential to establish a claim for compensation, it becomes the duty of the commission to deny the application on the ground that the claimant did not sustain his burden of proof. . . .' "

The *Lewellyn Case,* at pages 58, 59, also provides an appraisal of the factual situations which would deter-

mine whether or not the particular condition is recoverable:

"(1) If there is a definite 'breakage' (a letting go, a structural change, etc., as described by Professor Larson, while the employee is engaged in usual or normal activity on the job, and there is a relationship between the breakage and the effort exerted or motion involved, the injury is compensable regardless of whether or not the employee's condition was preexisting and regardless of whether or not there is evidence of prior trouble. . . .

"(2) If the employee is engaged in normal exertive activity but there is no definite 'breakage' or demonstrable physical change occurring at that time but only a manifestation of a definitely preexisting condition of a progressively deteriorating nature, recovery should be denied even if the manifestation or symptomization of the condition became apparent during normal employment activity. . . .

"(3) If the work activity precipitates, aggravates and accelerates beyond normal progression, a progressively deteriorating or degenerative condition, it is an accident causing injury or disease and the employee should recover even if there is no definite 'breakage.' . . ."

In applying these standards, the applicant was obliged to establish that a breakage occurred while she was employed by the defendant which was related to the effort exerted; or that the work activity precipitated, aggravated and accelerated beyond normal progression, a progressively deteriorating or degenerative condition.

In affirming, the circuit court placed particular emphasis on Mrs. Schroeder's failure to establish when the herniation took place.

Dr. George, testifying on behalf of the applicant, stated that his first examination of her at the hospital in October, 1965, after the "accident" revealed no significant abnormal neurological findings:

". . . my findings and examination were compatible with a lumbosacral strain and post-traumatic lumbosacral synovitis. . . . I treated her with conservative treatment at the time, which consisted of bed rest, pelvic traction, hot packs to the low back . . . she improved,

and she was discharged from the hospital on October 1, 1965."

The first abnormal neurological findings were made on November 12, 1965, three months after the work incident, when Mrs. Schroeder developed some sciatic pain. ". . . .we realized that the problem was more than a strain; it was a disc injury with nerve root involvement." Mrs. Schroeder then entered the hospital for tests on January 18, 1966, a lumbar myelogram was performed on January 31, 1966, and surgery was performed on February 2, 1966.

Dr. George concluded:

". . . I believe that this so-called incident on that day at work was the cause of her disc injury, which gradually progressed to become a herniation and caused the pressure on the nerve root."

From this latter statement by Dr. George alone, the ILHR Department could draw a reasonable inference that the herniation took place at a later date. Against this conclusion, however, is the fact that there is no evidence of any trauma after the work incident. Dr. George also indicated that after a trauma the injury begins as a protrusion—"the patient has no sciatic pain, just a backache, and two weeks later this protrusion of a disc becomes extruded. It makes the hole bigger, comes out. Then the protruded disc becomes extruded and causes pressure on the nerve, and then you have the sciatica."

However, the testimony of Dr. Shapiro was credible evidence from which the ILHR Department could find that the disc injury did not occur on August 9, 1965, and that the injury was not related to the work effort.

Dr. Shapiro testified as follows:

"My conclusion was that the bending episode at work had no relation to the patient's subsequent difficulties with the lower back, and in my opinion it did not constitute a condition which would be comparable to an industrial injury. It was further my opinion that if a laminectomy and spinal fusion were performed, a spinal

fusion in women is an extremely rare procedure, and there must have been pre-existing pathology in the form of a congenital defect or slipping of a vertebra. Otherwise, I wouldn't be able to account for the need for a spinal fusion. . . ."

When asked by applicant's attorney what relationship working with the cores and constantly bending, day after day, forty hours a week, over several weeks, would have to Mrs. Schroeder's back problem, Dr. Shapiro testified as follows:

"If you are talking about the person who works for the company 25 years or 15 years doing the same job day in and day out, this question can be discussed separately, but if you are talking about Mrs. Schroeder, who started working in April 1965, and four months later experienced difficulty, I would say it has no relation."

When asked whether he had any information that would indicate in any manner that Mrs. Schroeder's condition resulted from anything other than her employment, Dr. Shapiro responded:

"I didn't go into it. I have no opinion as to this. She might have had degenerative osteoarthritis. She might have weak muscles. She might have posture difficulties."

We have repeatedly said that it is the function of the Department and the examiners to evaluate medical testimony and determine its weight, and their finding on disputed medical testimony is conclusive. *Giant Grip Mfg. Co. v. Industrial Comm.* (1956), 271 Wis. 583, 74 N. W. 2d 182; *Borden Co. v. Industrial Comm.* (1958), 2 Wis. 2d 619, 622, 87 N. W. 2d 261; *Lewellyn, supra*, at 51.

In addition to the evidence already discussed is testimony that Mrs. Schroeder complained of back pains as early as 1961. Mrs. Schroeder testified that while she was a housekeeper at a Holiday Inn in October 1961, she went to pick up some towels that were in a hamper and "something snapped in my lower part of the back" and she suffered pain. She was treated by Dr. George who put her in a hospital and placed her in traction for two

weeks. Mrs. Schroeder was off of work six weeks and one day at that time.

Dr. George indicated that the "original injury" in 1961 could be a "probable cause" for the present surgery. However, Dr. George believed Mrs. Schroeder to be asymptomatic after the 1961 treatment until the time of her 1965 "accident." "To my knowledge, although Mrs. Schroeder has stated that she had some complaints of low backache during that interval, however she has not been seen by a doctor or treated by a doctor and this makes me doubt about the severity of her complaints during that interval and I would rather feel that she was medically asymptomatic during that period."

Mrs. Schroeder denied having any back pain in the interval between the 1961 and 1965 incidents. However, the above statement by Dr. George at least indicates that she had some complaints about her back.

As indicated in *Van Valin v. Industrial Comm.* (1962), 15 Wis. 2d 362, 112 N. W. 2d 920, evidence of prior trouble has high probative value on the question of extent of progression of a degenerative disease and the time and extent of aggravation or breakage. *See also Lewellyn, supra,* page 60.

This case is distinguishable from *Detter v. ILHR Department* (1968), 40 Wis. 2d 284, 161 N. W. 2d 873, where this court reversed the circuit court and the department and determined that on the basis of the undisputed facts the applicant sustained a herniated disc while in the employ of the Gisholt Corporation and that there was a relationship between the herniation and the turning motion involved in his employment. In that case there was no dispute that the injury was caused by the employment.

Based on the testimony of Dr. Shapiro, evidence of prior back problems, and other testimony, there is credible evidence to support the ILHR Department's implicit finding that there was no definite breakage and that the

work activity did *not* precipitate, aggravate and accelerate beyond normal progression, a progressively deteriorating or degenerative condition.

Therefore, Mrs. Schroeder did not come within either of the factual situations depicted in *Lewellyn* which would permit recovery.

The findings of fact by the ILHR Department are supported by credible evidence and are affirmed.

"The rule is that this court will affirm a finding of fact of the commission, unless such finding is clearly against all the credible testimony or so inherently unreasonable as not to be entitled to any weight. . . ." *Van Valin, supra,* pages 367, 368.

*By the Court.*—Judgment affirmed.