PITSCH (Raymond), by his widow on behalf of herself and minor children, Appellant, v. DEPARTMENT OF INDUSTRY, LABOR & HUMAN RELATIONS and another, Respondents.

*No. 201. Argued April 1, 1970.—Decided May 1, 1970.*
(Also reported in 176 N. W. 2d 390.)

56

For the appellant there was a brief by *Baker, Juliani, Stanhope, Joling & Greco* and *Carl M. Greco* and *Robert J. Joling*, all of Kenosha, and oral argument by *Carl M. Greco*.

For the respondent Department of Industry, Labor & Human Relations the cause was argued by *Gordon Samuelsen*, assistant attorney general, with whom on the brief was *Robert W. Warren*, attorney general.

HANLEY, J. The sole issue presented on this appeal is whether there is credible evidence to sustain the finding of the ILHR Department that the fatal myocardial infarction suffered by Raymond Pitsch on May 15, 1967, did not arise out of his employment.

The test of review recently reaffirmed in *R. T. Madden, Inc. v. ILHR Department* (1969), 43 Wis. 2d 528, 169 N. W. 2d 73, is whether there is any credible evidence

to support the department's finding that his accident was caused by a pre-existing condition rather than by the demands of his employment. In the instant case there is no disagreement as to the existence of the deceased's pre-existing coronary arterial disease.

At the hearing Dr. Harold Wagner testified that Mr. Pitsch's death resulted from employment related exertion which required his heart to work beyond the threshold of its reserve which had been impaired by his pre-existing condition. Dr. Francis F. Rosenbaum, however, indicated:

"It is my opinion, to a reasonable medical probability, that the fatal myocardial infarction in this patient was coincidental with the work performed on the morning of the patient's death. It is my opinion, further, to a reasonable medical probability, *that the work performed was sufficiently like that in which the patient was ordinarily involved that it cannot have been an unusual occupation and did not, therefore, aggravate the longstanding underlying heart disease nor precipitate the myocardial infarction which proved fatal.*" (Emphasis supplied.)

Relying on *Brown v. Industrial Comm.* (1960), 9 Wis. 2d 555, 101 N. W. 2d 788, the appellant presents two interrelated arguments to this court. Appellant's first contention is that Dr. Rosenbaum's testimony is not entitled to any weight in that it was based upon a belief that because the deceased was doing his usual work prior to his death, his injuries were not caused by such employment activities. Appellant's second contention is that the ILHR Department failed to apply the standard set forth in *Brown, supra,* in that the basis for its finding that deceased's work "did not aggravate the underlying heart disease nor precipitate the myocardial infarction" was likewise the fact that he was doing his usual work.

From these contentions it is apparent that the appellant has failed to distinguish *legal* causation from *medical* causation. The distinction is clearly set forth in 1A

Larson, *Law of Workmen's Compensation*, p. 622.20, sec. 38.83:

"Under the legal test, the law must define what kind of exertion satisfies the test 'arising out of the employment.'

"Under the medical test, the doctors must say whether the exertion (having been held legally sufficient to support compensation) in fact caused this collapse.

"All too often these two tests are scrambled together. . . ."

In *Brown, supra,* this court affirmed a circuit court reversal of a finding by the industrial commission. The industrial commission had denied recovery because the claimant, who had pre-existing back condition, was engaged in his usual work at the time the injury was incurred. This court, in reversing, stated, at page 570:

"There is no burden upon the employee to show that the exertion being put forth at the time of the herniation was in any way unusual to his employment. . . ."

In so stating this court determined, although not directly, that causation legally sufficient to support compensation did not require a showing of strain or exertion greater than that normally required by the applicant's work efforts. *Brown, supra,* however, did not preclude a doctor, when determining *medical* causation, from considering whether the employee was engaged in his usual work at the time of injury. Since the nature of one's work activities at the time of injury as compared with the nature of one's usual or routine work is a proper factor to be considered by a doctor, Dr. Rosenbaum's testimony is not deprived of all weight credibility.

Subsequent to our denial in *Brown, supra,* of unusual activity as a prerequisite to recovery, this court in *Lewellyn v. ILHR Department* (1968), 38 Wis. 2d 43, 54, 155 N. W. 2d 678, considered:

". . . whether recovery should be allowed when a pre-existing condition becomes manifest or symptomatic during normal activity where the activity bears some relationship to the manifestation."

It then set forth, at pages 58 and 59, three categories to be employed in testing the legal sufficiency of causation: [1]

"(1) If there is a definite 'breakage' (a letting go, a structural change etc., as described by Professor Larson), while the employee is engaged in usual or normal activity on the job, and there is a relationship between the breakage and the effort exerted or motion involved, the injury is compensable regardless of whether or not the employee's condition was preexisting and regardless of whether or not there is evidence of prior trouble. . . .

"(2) If the employee is engaged in normal exertive activity but there is no definite 'breakage' or demonstrable physical change occurring at that time but only a manifestation of a definitely preexisting condition of a progressively deteriorating nature, recovery should be denied even if the manifestation or symptomization of the condition became apparent during normal employment activity. . . .

"(3) If the work activity precipitates, aggravates and accelerates beyond normal progression, a progressively deteriorating or degenerative condition, it is an accident causing injury or disease and the employee should recover even if there is no definite 'breakage.' . . ." (Citations omitted.)

In the instant case, the hearing examiner (whose findings were affirmed by both the ILHR Department and the circuit court) found that the deceased's employment activities ". . . did not aggravate the underlying

---

[1] *See Reich v. ILHR Department* (1968), 40 Wis. 2d 244, 161 N. W. 2d 878; *Detter v. ILHR Department* (1968), 40 Wis. 2d 284, 161 N. W. 2d 873; and *Schroeder v. ILHR Department* (1969), 43 Wis. 2d 12, 168 N. W. 2d 144, wherein this court reviewed the application of the *legal* standards set forth in *Brown, supra,* and *Lewellyn, supra.*

heart disease nor precipitate the myocardial infarction which resulted in his death" and thus found number (3) above inapplicable.

Because the basis for this finding was Dr. Rosenbaum's testimony that the deceased was not involved in other than his usual work prior to his collapse, the appellant, relying on *Brown, supra,* raised his second contention that the department erred in affirming such finding.

In *Brown, supra,* the industrial commission held that there was no accident arising out of claimant's employment because his employment activities at the time of his injury were the same as those which he normally performed. The commission had thus, in effect, stated that because his activities were usual there was insufficient *medical* causation to support an award of compensation, *i.e.,* to show that his employment caused his injury. In the instant case, the department likewise found insufficient *medical* causation because the deceased's activities just prior to the time of his death required no greater physical exertion than he normally exerted.

The trial court in its decision recognized this identity between the commission's ruling in *Brown, supra,* and the ILHR Department's ruling in the instant case, but stated:

"In our judgment we would be doing a useless service to the applicant to order this case remanded so that the Commission could strike the word 'therefore' from the final sentence of the examiner's findings. *It is manifestly clear that Dr. Rosenbaum's expert testimony clearly supports the finding of fact that the deceased did not sustain an accidental injury arising out of his employment."* (Emphasis supplied.)

This statement by the trial court, however, ignores the fact that in *Brown, supra,* there was also medical testimony which supported the commission's finding that

the accidental injury did not arise out of the claimant's employment, *i.e.*, that the injury was not caused by the claimant's employment.

In *Brown, supra,* Dr. Levin, testifying for the claimant-employee, stated at pages 563 and 564:

" '. . . Inasmuch as it appears from his testimony both this morning and in the delineation of the history to me that the work he did the day of onset of backache was unusual work, was different from what he had done previously and was accustomed to do regularly, I believe it is a cause of the herniated disc.' "

Dr. Sadoff who also testified for the claimant-employee stated at pages 566 and 567:

" '. . . On that day he did mason work of an unusual character in that he was working on the inside wall and putting up inside and outside walls. He had to bend forward to lay the brick on the outside wall requiring [of] him excessive bending in unusual positions to lift and place the brick in proper position and line them up.
" '. . . The constant bending over from inside to the outside wall would be enough to bring on this condition.' "

Had this been the only testimony before the examiner, this court would have been correct in overruling the commission's finding that there was no accident arising out of the claimant's employment, *i.e.*, that injury was not caused by claimant's employment, in that the commission in so finding would have created a *legal* definition of causation.

This court's decision in *Brown, supra,* however, appears to be erroneous in that the commission's finding was supported by the medical testimony of Dr. David J. Ansfield, who stated, at page 568:

" '. . . Well, it is my feeling that the symptoms which he developed on that date had no relationship to the work which he was doing at that time; that the work which he was doing was not unusual; it was not haz-

ardous; it was not excessive; and it certainly wasn't capable of producing a ruptured disc in any individual who had a normal disc. . . . Ordinary bending, even in the manner in which the patient did, reaching over a wall which was about a foot and a half high to lay brick wouldn't be in any way unusual or hazardous. . . . I feel that it did not arise out of his work.' "

When the commission, in *Brown, supra,* made its finding, it was merely accepting Dr. Ansfield's testimony as to *medical* causation rather than the testimony of Drs. Levin and Sadoff. It was not establishing its own *legal* definition of causation. All language indicating to the contrary is withdrawn, for contrary to this court's determination therein, the commission had not superimposed upon the statutory requisites to compensation the additional requirement that one must prove his injury was the result of exertion other than that which was normally required by his employment.

Thus, while we agree with the ultimate result in *Brown,* the foregoing is an attempt to ameliorate the confusion created by the reasoning used to reach such result.

As we view it, a doctor's function, in cases such as this, is to determine whether a claimant's injury was *medically* caused by his work activities or by his preexisting condition. In determining the *medical* cause of one's injury, there is no prohibition against a doctor's considering whether, at the time of one's injury, he was performing his usual tasks which he had previously performed on a routine basis. He may also consider the claimant's physical strength and the physical exertion necessary for the tasks performed at or immediately prior to the injury.

The foregoing considerations are not meant to be exhaustive but merely indicate that a doctor should actually exercise his medical judgment. He should not *automatically* conclude that each time one is injured

while performing a task which he previously performed on a usual or regular basis, such injury was caused by pre-existing injury rather than by his employment.

Whether a medical expert has, in fact, exercised his medical judgment should, of course, be tested by cross-examination and, if it be shown that the expert has failed to do so, the examiner will of necessity reject his testimony. The examiner, however, in choosing between conflicting medical testimony as to the cause of an injury cannot disregard the testimony of a doctor merely because such doctor has considered whether an employee-claimant was performing his usual tasks at the time of his injuries. Such rejection by an examiner would create the additional prerequisite to recovery (that work effort must be unusual in order to recover) which this court in *Brown, supra,* erroneously thought the commission had created.

In the instant case, the opinion of Dr. Francis F. Rosenbaum, whose testimony the examiner accepted, was not based solely upon the fact that the deceased was performing his usual employment duties immediately prior to his death. This is shown by the following testimony of Dr. Rosenbaum:

"To a reasonable medical probability, I think he died of a cardiac arrest, probably due to complete heart block, and this opinion is based upon the fact that the electrocardiograms showed this to be a posterior myocardial infarction; that is, involving the posterior—back aspect of the heart, and Dr. Wagner has described an area in the heart which he—I think, as he put it, there was some change in the consistency, and that too was in the posterior aspect of the heart, and patients who have a myocardial infarct in that location are particular[ly] prone to developing heart block, complete heart block with a cessation of the activity of the ventricle, and I think that that was most probably the mechanism of death here. The second possibility, of course, is that he had ventricular fibrillation, which would mean a sudden chaotic rhythm of the heart."

In addition, Dr. Rosenbaum refuted the claim that the exertion of carrying concrete blocks exceeded Pitsch's cardiac reserve by pointing out that such work was not more strenuous than Pitsch's hourly climb of ten steps carrying his own weight of 185 to 190 pounds, plus 20 steps at two other times each day.

As stated in *Unruh v. Industrial Comm.* (1959), 8 Wis. 2d 394, 398, 99 N. W. 2d 182:

"The question is not whether there is credible evidence in the record to sustain a finding the commission did not make, but whether there is any credible evidence to sustain the finding the commission did make."

See also: *Burks v. ILHR Department* (1969), 45 Wis. 2d 1, 5, 172 N. W. 2d 27.

Since we find Dr. Rosenbaum's testimony sufficient to sustain the examiner's finding that Pitsch's work "did not aggravate the underlying heart disease nor precipitate the myocardial infarction," [2] the circuit court's judgment affirming the ILHR Department's order is affirmed.

*By the Court.*—Judgment affirmed.

[2] *See: Tews Lime & Cement Co. v. ILHR Department* (1968), 38 Wis. 2d 665, 671, 158 N. W. 2d 377, wherein, despite pre-existing arteriosclerosis, medical testimony supported a finding that the applicant's work effort was the cause of his heart attack and death.