ERICKSON, Respondent, v. DEPARTMENT OF INDUSTRY, LABOR & HUMAN RELATIONS and another, Appellants.

No. 191. *Argued November 3, 1970.—Decided December 1, 1970.*
(Also reported in 181 N. W. 2d 495.)

For the appellant Department of Industry, Labor & Human Relations the cause was argued by *Gordon Samuelsen,* assistant attorney general, with whom on the briefs was *Robert W. Warren,* attorney general.

For the appellants Olin Mathieson Chemical Corporation and Travelers Insurance Company there was a brief by *Stafford, Rosenbaum, Rieser & Hansen* and *Ralph Wm. Bushnell,* all of Madison, and oral argument by *Mr. Bushnell.*

For the respondent there was a brief by *Hart, Wightman & Thurow* and *Walter D. Thurow,* all of Madison, attorneys, and *Francis Bannen* of Wisconsin Dells, of counsel, and oral argument by *Walter D. Thurow.*

CONNOR T. HANSEN, J. The issue on appeal is whether there is credible evidence to support the examiner's finding that Erickson did not sustain the injury to his back on August 23, 1967, as alleged.

If there is credible evidence to support the findings of the department, such findings will not be upset on appeal. *R. T. Madden, Inc. v. ILHR Department* (1969), 43 Wis. 2d 528, 169 N. W. 2d 73. It is the duty of the department to deny compensation if it finds a legitimate doubt exists regarding the facts necessary to establish a claim.

" 'It is an elementary principle of law that the applicant has the burden of proof in a workmen's compensation case, and if the evidence before the Industrial Commission is sufficient to raise in the mind of the commission a legitimate doubt as to the existence of facts necessary and essential to establish a claim for compensation, it becomes the duty of the commission to deny the application on the ground that the claimant did not sustain his burden of proof. *Nielsen v. Industrial Comm.* (1961), 14 Wis. (2d) 112, 109 N. W. (2d) 483; *Fitz v. Industrial Comm.* (1960), 10 Wis. (2d) 202, 102 N. W. (2d) 93; and *Johnston v. Industrial Comm.* (1958), 3 Wis. (2d) 173, 87 N. W. (2d) 822.' " *Lewellyn v. ILHR Department* (1968), 38 Wis. 2d 43, 52, 155 N. W. 2d 678.

However, when compensation is denied there must be sufficient evidence to support the department's findings that the facts are not as the applicant alleged them to be.

". . . The rule is stated as follows in *Beem v. Industrial Comm.* (1943), 244 Wis. 334, 337, 12 N. W. (2d) 42:

" ' "If the evidence before the commission was such as to raise in the minds of the commission a legitimate doubt as to the existence of facts essential to compensation, it would be the duty of the commission to deny compensation, on the ground that the applicant did not sustain the burden of proving to the satisfaction of the commission that the facts were as he claimed them to be." '

"This does not mean, however, that any doubt is a legitimate doubt so long as the commission chooses to entertain it. While the applicant has the burden to prove his facts to the satisfaction of the commission, the rule does not permit the commission to exercise its judgment arbitrarily and capriciously. . . . There must be in the testimony some inherent inconsistency before the commission is warranted in entertaining a legitimate doubt. It cannot rely solely upon its cultivated intuition." *Richardson v. Industrial Comm.* (1957), 1 Wis. 2d 393, 396, 397, 84 N. W. 2d 98.

The evidence in this case which would support the finding of the department that the incident did not occur at work, as alleged, was the conflicting testimony that Erickson failed to report the incident to his immediate supervisor after it occurred, and evidence that Erickson had experienced prior episodes of sciatic pain. Therefore, the question is whether this evidence was sufficient to raise a legitimate doubt.

The conflicting testimony is as follows: Erickson testified that prior to the alleged incident he had no problems with pain in his legs or back. He denied that he experienced problems with his back while on vacation the week preceding the alleged injury at work, although he admitted his back got tired. Erickson also testified that after the injury at work had occurred his immediate supervisor, Mr. Henke, drove him to the plant hospital

and at that time he told Henke about the incident which had occurred.

Mr. Henke testified that on the morning of the incident, at approximately 8 a. m., while driving Erickson to his location on the plant grounds, he (Erickson) complained of pain in his back and legs and stated that this had bothered him while on vacation the previous week. Henke denied that he drove Erickson to the hospital after the incident but he testified that he saw Erickson in the office prior to the time he went to the plant hospital, at which time Erickson stated he was having pain in his leg and asked for an admission slip to the hospital. Henke denied that Erickson told him about any incident that occurred on the job which had caused the pain. He stated that the first he learned of the alleged incident at work was when Erickson called him from the hospital on August 26, 1967.

Erickson later testified that he was not sure he had driven to the hospital with Mr. Henke; that he thought it was Henke who had driven him, but he was in pain and did not remember. Concerning the 8 a. m. conversation, he testified that he told Henke that his legs got stiff from sitting and driving while on vacation, but denied telling Henke he had pain in his leg, either while on vacation or that morning before the alleged incident at work.

*Failure to report the alleged incident.*

In support of his finding that no incident occurred at work, the examiner found that while Henke transported him to the hospital, Erickson made a reference to having a pain in his back and leg and indicated that the trouble had arisen while on his vacation trip. There is no support in the evidence for this finding. Henke denied that he drove Erickson to the hospital and Erickson later admitted he was not sure it was Henke who had driven

him. Henke's testimony about his conversation with Erickson concerning the pain he had had while on vacation related to a conversation which occurred prior to the time Erickson began working on August 23, 1967, and prior to the time the alleged incident occurred. The testimony of Henke, with regard to the conversation before the alleged incident at work, tended only to prove that Erickson had experienced pain prior to the alleged incident. Henke's only testimony concerning the conversation before Erickson was admitted to the plant hospital was that Erickson did not relate to him at that time any incident which had occurred at work. The testimony tended only to prove that Erickson did not immediately report the incident to Henke.

The facts are also in dispute as to whether Erickson reported the incident at the plant hospital. Erickson testified that he told the nurse there he had been hurt and how it happened.

The nurse in charge of the plant hospital testified that Erickson came to the hospital on August 23, 1967, and stated he was having pains in his leg and could not finish out the day. She also testified Erickson did not indicate there had been any occurrence or fall causing the pain. However, she admitted that she did not personally hear him make any statements and that the statements were made to another nurse. The testimony of the nurse was objected to but was admitted by the examiner, subject to exception. The examiner made a positive finding on the basis of the nurse's testimony, ". . . that the applicant had also reported to the first aid department relative to experiencing sciatic pain in his leg that day and requested some medication and that at that time there was no reference to a fall while carrying a timber; . . ."

This testimony was hearsay, being testimony as to what another nurse stated Erickson had said or omitted to say, and was, therefore, not properly considered by

the examiner. In *Wisconsin Telephone Co. v. Industrial Comm.* (1953), 263 Wis. 380, 385, 57 N. W. 2d 334, this court held that hearsay testimony may not be the basis of a finding by the industrial commission. In *Outagamie County v. Brooklyn* (1962), 18 Wis. 2d 303, 118 N. W. 2d 201, the court held that in hearings before administrative agencies hearsay testimony should not be received over objection where direct testimony of the same fact is obtainable. The first aid treatment record itself was not introduced into evidence and there was no showing that the nurse who talked with Erickson could not be produced. Erickson testified that he had asked his employer for the name of the nurse who had treated him, but this information was refused.

Excluding the testimony of the nurse, which was improperly included in the examiner's findings of fact, the testimony of Erickson that he reported the incident to the nurse who attended him at the plant hospital is unimpeached. Erickson's testimony that he reported the incident to Dr. Broderick the following day is also unimpeached. This testimony is corroborated by a notation in the hospital record which reveals that Dr. Broderick's tentative diagnosis at the time Erickson was admitted to the hospital on August 24, 1967, was "Traumatic sciatica, left leg." Dr. Broderick's history of the illness, which is also part of the hospital record, also reveals that Erickson reported to him about the incident at work:

"History of present illness: The patient returned several weeks ago from a trip to the west and returned to work. He works at B. O. W. plant as a carpenter. There, he lifted two 2 by 4's at a time and sustained sudden, intense, pain in the back which knocked him to his knees. Since then he has had intractable pain in the left leg running down the course of the sciatic nerve."

Dr. Sachtjen's consultation record of examining Erickson on September 4, 1967, shows that Erickson also reported to him the incident occurring at work:

". . . HPI—He reports that several weeks ago he took a trip to the black hills. He noted some stiffness and tiredness in the back and questionable something in the leg. However, approximately 2 weeks ago while in the employ of BOW he was lifting some timber when he experienced an acute leg symptomatology and brought him to his knees and he was unable to work since that time. . . ."

Thus, the only evidence concerning Erickson's failure to report the incident was the testimony of Henke that he did not report the incident to him immediately after it occurred.

Appellants contend that the failure to report an incident creates an inference that it never occurred. Appellants cite *Reich v. ILHR Department* (1968), 40 Wis. 2d 244, 255, 161 N. W. 2d 878. However, in that case while there was testimony that the applicant failed to report the incident both at work and to her physician, as well as other inconsistencies in the testimony, this court held the evidence was not such that the department could find a legitimate doubt existed that the incident occurred.

*Prior medical history.*

The examiner found various inconsistencies and conflicts between the medical history and the statements made by the applicant. Erickson's testimony that he had had no prior problems with his legs or back was impeached. Henke's testimony that Erickson had told him of experiencing leg and back pain while on vacation is described above. However, this conversation related by Henke, contrary to the findings of the examiner, occurred prior to the time of the alleged incident at work.

The hospital record also indicated that Erickson reported to his treating physicians, prior episodes of sciatic pain.

"Past history and habits: . . . Has had 2 attacks of left sciatic neuritis which have been treated medically." (Dr. Broderick's History and Physical Examination.)

"Past medical history—reveals that this is the 3rd episode of sciatica. . . ." (Dr. Sachtjen's Consultation Record.)

However, a pre-existing condition is not a bar to workmen's compensation benefits. In *Lewellyn v. ILHR Department, supra,* pages 58, 59, this court stated:

". . . the following we feel represent an accurate appraisal of the factual situations which should determine whether or not the particular condition is recoverable:

"(1) If there is a definite 'breakage' (a letting go, a structural change, etc., as described by Professor Larson), while the employee is engaged in usual or normal activity on the job, and there is a relationship between the breakage and the effort exerted or motion involved, the injury is compensable regardless of whether or not the employee's condition was preexisting and regardless of whether or not there is evidence of prior trouble. *Brown v. Industrial Comm., supra,* and *Indianhead Truck Lines v. Industrial Comm., supra.*

"(2) If the employee is engaged in normal exertive activity but there is no definite 'breakage' or demonstrable physical change occurring at that time but only a manifestation of a definitely preexisting condition of a progressively deteriorating nature, recovery should be denied even if the manifestation or symptomization of the condition became apparent during normal employment activity. *Shawley v. Industrial Comm., supra; Van Valin v. Industrial Comm., supra;* and Currie, 37 Wis. Bar Bulletin 7.

"(3) If the work activity precipitates, aggravates and accelerates beyond normal progression, a progressively deteriorating or degenerative condition, it is an accident causing injury or disease and the employee should recover even if there is no definite 'breakage.' *Shawley v. Industrial Comm., supra;* Currie, 37 Wis. Bar Bulletin 7."

Therefore, the question is whether the evidence before the department was sufficient to raise a legitimate doubt

that there was no incident at work which caused an acute herniation or aggravated the pre-existing condition.

The most the impeaching evidence establishes is that Erickson had a pre-existing back condition. In *Schroeder v. ILHR Department* (1969), 43 Wis. 2d 12, 20, 168 N. W. 2d 144, this court stated, "[E]vidence of prior trouble has high probative value on the question of extent of progression of a degenerative disease and the time and extent of aggravation or breakage."

In this case, Erickson testified concerning an incident at work which resulted in an acute onset of pain. In addition to the hospital records, the reports of three doctors who examined Erickson were included in the record. Each report included a description of the incident related by Erickson. In answer to question 4 of the report which asks, "State in patient's own words the accident or work exposure to which he attributes the condition for which he saw you," the medical reports show:

"Patient states that on 8–23–67, while working for Badger Ordnance Works he lifted two 2x4's and at the time sustained sudden, intense pain in the back which knocked him to his knees." (WC–16–B report of Dr. Broderick.)

"He lifted some timbers experiencing pain in the back and leg pain." (WC–16–B report of Dr. Sachtjen.)

"As patient was carrying a large timber weighing approximately 100 lbs. he stepped into a low spot in the ground. He experienced pain in the left low back with radiation of pain down the lateral aspect of the left lower extremity to the ankle." (WC–16–B report of Dr. Salinsky.)

Question 10 asks, "In your opinion, did the accident or work exposure described in Item 4 directly cause the disability?" Each of the doctors answered this question, "Yes."

The medical reports were presented by the claimant; were received in evidence without objection under sec. 102.17 (1) (as), Stats.; and thus are prima facie evidence of the matter contained therein.

"The statute provides that such a report, when offered by a claimant, 'shall constitute prima facie evidence as to the matter contained therein,' subject to rules promulgated by the commission. The commission has determined that the only grounds for excluding these reports are incompetency or immateriality, in which case proper objection must be made. 3 Wis. Adm. Code, sec. Ind 80.22." *Davis v. Industrial Comm.* (1964), 22 Wis. 2d 674, 679, 126 N. W. 2d 611.[1]

The only direct inconsistencies between the medical reports and Erickson's testimony was the size of the timbers he was carrying.

The examiner could disregard the conclusion in the medical reports that the back injury was caused by the alleged incident at work, if he did not believe the statements related by the applicant concerning the incident were true. *Davis v. Industrial Comm., supra.* However, the fact remains that a herniated disc was diagnosed shortly after the incident. The only testimony which would support an inference that the herniation occurred prior to the alleged incident at work was Henke's testimony that Erickson complained of leg pain prior to the time of the alleged incident. There was no medical testimony that the herniation was caused by anything other than the incident which Erickson described as occurring at work.

---

[1] "IND 80.22 Use of physicians' reports as evidence. See section 102.17 (1) (as), Wis. Stats.

"(1) Matters stated in such report which would not be competent or material evidence if given as oral testimony shall not be competent or material as prima facie evidence if objection is made, except as corroborated by competent and material oral testimony." 4 Wis. Adm. Code.

Dr. Sachtjen testified at the hearing that pain radiating from the lower back to the leg would be highly suspicious of probable herniation. However, he was not asked whether in his opinion the herniation in Erickson's case occurred prior to the time of the alleged incident or was caused by anything other than the alleged incident. Thus, the substance of his medical report that Erickson's disability was caused by the alleged incident which he described as occurring at work, was in no way changed by his subsequent testimony.

Appellants contend that the impeaching and conflicting testimony was sufficient to raise a legitimate doubt that he sustained an injury at work, citing *Theisen v. Industrial Comm.* (1959), 8 Wis. 2d 144, 153, 98 N. W. 2d 446. That case also concerned an employee's claim for a disc injury which he allegedly suffered while at work. In that case where there was testimony that the claimant corruptly attempted to influence a witness, the court excluded all the uncorroborated testimony of the applicant, conflicting testimony that the applicant had reported the incident, and the opinions of doctors based on the claimant's statement to them of the alleged incident. This court, nevertheless, indicated that where the claimant was able to work before the alleged incident and not thereafter, something must have happened which caused the pain and disability to work. In that case, the court quoted the following from the opinion of the circuit court:

" 'It is undisputed that applicant had performed his work including the loading of 60-pound butter tubs without incident for two to three hours before the alleged injury. There is no dispute as to the conditions present when he was found except whether the racks on which the tubs stood were wet, damp, or dry. . . . There is not a scintilla of evidence which permits of a reasonable doubt or a reasonable inference but that the applicant was able to work up to the time in question, that some-

thing happened in that cooler; that that something caused pain which disabled him from continuing his work; and that that something was diagnosed in a matter of two or three hours later and verified by the subsequent operation as a so-called slipped disc. There is no inconsistency in any of these facts.' " *Theisen v. Industrial Comm., supra,* pages 153, 154.

The circuit court, in the present case, held *Theisen* was controlling:

"Plaintiff testified that prior to August 23, 1967, he never had back trouble or leg pains. He later admitted he had had both on prior occasions. Henke denied that plaintiff told him about the accident shortly after it happened. Henke testified that plaintiff did not say anything about an accident.

"The impeachment regarding whether the alleged accident occurred consists primarily in the fact that the employer's witness Henke denies that plaintiff told them an accident had happened and says that plaintiff told him he had back and leg trouble and pain while on vacation the week prior to the alleged accident.

"If we accept as true all of the impeaching testimony and reject all of the contrary testimony by the plaintiff, we are left with this: Plaintiff took a vacation, he came back to work and did perform his work as a carpenter for several days until 10 a. m. or 11 a. m. on August 23, 1967, at which time he became so disabled by reason of a herniated nucleus pulposus that he could no longer even drive nails. It was after he had worked for two or more hours that he became disabled. The impeaching evidence does little more than establish that plaintiff was probably on the verge of disabling back trouble, but he was not disabled from work. A carpenter's work, especially in building, is one calling for physical activity and considerable effort. One can only accept the fact that something occurred at work that changed plaintiff from a person able to do his job to complete disability in a very short time.

"We are definitely of the opinion that this case is governed by Theisen v. Ind. Comm. 8 Wis. 2d 144 and the court's reasoning therein, which we see no reason to repeat. . . ."

The evidence before the examiner in this case was not sufficient to raise a legitimate doubt as to the existence of facts essential to compensation.

In *Davis v. Industrial Comm., supra,* this court held the evidence was sufficient to raise a legitimate doubt that an alleged herniated disc occurred while at work. However, in that case it was not necessary for the applicant to stop working on the day of the alleged incident. He continued to work until laid off some ten months later, and did not see a physician about his condition until laid off.

Similarly, in *Schroeder v. ILHR Department, supra,* the herniated disc was not diagnosed until a year and a half after the alleged incident at work and there was direct medical testimony that the alleged incident had no relation to the claimant's subsequent difficulty in the lower back.

In *Van Valin v. Industrial Comm.* (1962), 15 Wis. 2d 362, 112 N. W. 2d 920, this court sustained the finding of the department that the herniated disc was due to causes wholly unrelated to employment. In that case the applicant was treated for hypertrophic arthritis immediately after the alleged incident, and a herniated disc was not diagnosed until six weeks after the alleged incident. There was direct medical opinion testimony that there was no relation between the claimant's employment and her herniated disc.

In *Lewellyn v. ILHR Department, supra,* a herniated disc was discovered the year following the alleged incident at work, and there was opinion testimony by the medical expert who treated the applicant that the incident at work did not produce the herniated disc.

In *Detter v. ILHR Department* (1968), 40 Wis. 2d 284, 161 N. W. 2d 873, this court refused to sustain the department's findings that the herniation was spon-

taneous where the opinions of all the medical witnesses were that the herniation occurred because of an incident at work.

In *Reich v. ILHR Department, supra,* this court found the facts were not sufficient to create a legitimate doubt that alleged incidents at work had occurred which caused the claimant's herniated disc, where there was evidence that the claimant was unable to work after the alleged incident and was hospitalized two days later, and where there was no medical testimony that the herniation was caused by anything other than the alleged incident, even though the applicant failed to report the incident at work, had had frequent episodes of back pain in the past and failed to give her doctor a history of trauma at the time he treated her.

We conclude that the judgment of the circuit court should be affirmed.

*By the Court.*—Judgment affirmed.