BUMPAS, Plaintiff-Respondent, V. DEPARTMENT OF IN-
DUSTRY, LABOR & HUMAN RELATIONS, Defendant:
ADVANCE UNITED EXPRESSWAYS, INC., and another,
Defendants-Appellants.†

Court of Appeals, District IV

*No. 77–539. Submitted on briefs August 23, 1978.—
Decided September 21, 1978.*
(Also reported in 271 N.W.2d 142.)

† Petition to review pending. This petition was not decided at
the time the volume went to press. Its disposition will be reported
in a later volume.

For the appellant the cause was submitted on the brief of *Thomas L. Smallwood,* and *Borgelt, Powell, Peterson & Frauen, S. C.,* of Milwaukee.

For the respondent the cause was submitted on the brief of *Edward F. Neubecker, Barry F. Bruskin,* and *Neubecker, Schrinsky & Bruskin,* of Milwaukee.

Before Gartzke, P.J., Bablitch and Dykman, JJ.

BABLITCH, J.   This is an appeal from a circuit court judgment reversing an order of the Department of Industry, Labor & Human Relations.  The department had affirmed its hearing examiners in dismissing claimant's application for worker's compensation benefits.

The respondent Bumpas (claimant), a 44 year old truck driver, filed the application on March 11, 1974, alleging that on January 28, 1974, he slipped at work and injured his left knee.  He indicated on the application that he had reported this accident to his employer both orally and in writing.

The only testimony adduced at hearings on February 4 and August 2, 1976, was that of claimant, a co-worker whose testimony was ignored by the circuit court for reasons stated hereafter, and a doctor called by the employer. Claimant also offered five WC–16–B reports, one from Dr. Lawrence L. Foster, who performed surgery on claimant's left knee in February, 1974, and four from Dr. Robert O. Buss, a partner of Dr. Foster who performed additional surgery on the same knee in March, 1975. These reports were received into evidence, as were voluminous hospital records relating to both surgeries, and to surgeries which had been performed on the claimant's right knee some years earlier.

Claimant testified that on January 28, 1974, he slipped on some ice in the employer's parking lot while getting into his car, twisted his left knee, and experienced immediate severe pain. He stated several times, both on direct and on cross-examination, that he had never experienced pain or difficulty in his left knee prior to this time. He testified that this incident was witnessed by a co-employee, and that immediately after lunch he reported the injury to the morning dispatcher. Though he continued to work throughout the balance of the day, the pain in his left knee continued to bother him, and the next day he commenced a previously unscheduled two week vacation during which he visited his parents in Antigo and "rested." On cross-examination claimant testified that he held a pilot's license, and that he also flew a private plane out of Mitchell Field, Milwaukee, during that same two week period.

Though claimant testified both on direct and cross-examination that he did not see any doctor or seek any medical treatment for his injury until his return from vacation on February 15 or 16, Dr. Foster's WC–16–B report, which is dated January 12, 1976, contains the following reference: "1–29–74 Initial examination and X-ray, bilateral knees."

Dr. Foster admitted claimant to Elmbrook Memorial Hospital on February 17, 1974, and performed an arthrotomy on his left knee on February 18. A hospital report dictated and subscribed by Dr. Foster on or about February 18, 1974, contains the following "History of Present Illness":

"This 43 year old gentleman has had increasing pain in his left knee *over the past several months* and at the present time has had to discontinue several of his pass times [sic] because he is unable to utilize the left leg. When he stands on it he feels a sharp pain frequently and there will be a catching in the knee causing his knee to give out. He has x-ray evidence of what appears to be loose bodies and spurs within the left knee which is probably accounting for his problem. The patient has had surgery on his right knee in the past and has had four operative procedures, the last one two years ago and is doing quite well with the right knee." (Emphasis supplied.)

Though another section of this report contains a clearly erroneous reference to the patient's "pain in his *right* knee," the report concludes with Dr. Foster's "impression" of "[d]egenerative arthritis with loose bodies and possible torn meniscus, knee, left."

The hospital records contain one further report subscribed by Dr. Foster which bears a notation that it was dictated on April 27, 1974.[1] It indicates that during the February 18 surgery he removed a torn medial meniscus, shaved the femoral patella, excised a loose body, confirmed his tentative diagnosis of "mild" degenerative arthritis, and discovered in addition a patellar chondromalacia. This report contains the following:

---

[1] Claimant's brief ignores the existence of this second report. The circuit court's opinion contains no reference to it. We can only assume that neither party directed that court's attention to the existence of this critical piece of evidence.

"This 43-year-old gentleman entered the hospital for treatment of pain in his left knee. He, *for the past several months, has had discomfort in his knee with increasing pains recently.* There has been some catching in his knee, and when he is walking it will give out on him." (Emphasis supplied.)

In neither of these two reports, nor in any of the other hospital and medical records, is there reference to an accident on January 28, 1974, or to a traumatic etiology of the left knee problems found by Dr. Foster in February. Claimant testified on cross-examination that he did not remember what he told the hospital authorities on his admission to the hospital, but that he did remember telling Dr. Foster about slipping on the ice at work.

The co-employee testified that, though he could not remember the exact day or month, he witnessed claimant slip in the parking lot during the winter of 1974. He testified that he had either failed to reveal the incident to the company's insurance adjuster or had told the adjuster that he had *not* seen claimant slip because he "didn't want to get involved," and because he believed that if he had told him of the fall in the parking lot claimant would not be eligible for worker's compensation benefits. The circuit court found that the co-worker had impeached himself and ignored this testimony in reaching its decision.

At the August 2, 1976 hearing, the only witness was Dr. Coles, who examined claimant in October, 1975, at the request of the employer. His written narrative report dated November 11, 1975, was also received into evidence. He testified that he had reviewed the medical reports and hospital records, and that based upon the examination and review he believed that the arthritis, loose body, and chondromalacia found by Dr. Foster during the February, 1974 surgery were conditions preceding January 28, 1974. He conceded that arthritic

conditions can be aggravated by traumatic accidents, but reaffirmed the contents of his written narrative report which concluded:

"Whether or not the patient sustained a significant injury to his left knee on January 28, 1974 remains questionable, since the admitting history on February 17, 1974 does not describe any specific injury, and reference is made to left knee pain of several months duration."

Dr. Coles also gave his opinion that the "medial instability of the left knee" which was diagnosed by Dr. Buss in February, 1975, and which necessitated the corrective surgery in March, 1975, was not related to the alleged accident in January, 1974, because according to the 1974 operative reports, "the medial collateral ligament was so tight at the time of the initial operation on the left knee that . . . [it] would not even admit the tip of the little finger on valgus stress."

The hearing examiners found that "no credible evidence was presented to establish that the above alleged injury actually occurred,"[2] and dismissed the application.

The issue for this court is whether the record contains credible evidence to support the examiners' finding that the alleged accident on January 28, 1974, did not occur. More precisely, the issue where relief to the applicant is denied is whether the evidence was sufficient to raise in the minds of the department a legitimate doubt as to the existence of facts essential to compensation. *Erickson v. ILHR Department,* 49 Wis.2d 114, 181 N.W.2d 495 (1970).

*Erickson* sets forth the applicable rules at length. In sum, they are as follows: the applicant has the

[2] Neither the examiners nor the department gave any reasons for this finding.

burden of proving all facts essential to his claim for compensation; if, on the evidence, the department finds a legitimate doubt as to the existence of those facts, it is the duty of the department to deny compensation; in finding a legitimate doubt, the department is not entitled to act arbitrarily or capriciously, or to "rely solely on its cultivated intuition"; a "legitimate doubt" must rest on some "inherent inconsistency" in the testimony. *Erickson v. ILHR Department, supra,* pp. 118, 119, citations omitted.

Applying those principles to the facts before it in *Erickson,* the Supreme Court found insufficient inconsistencies to justify the department's denial of compensation. The circuit court believed that this case is controlled by *Erickson.* While the facts of the two cases are similar, this case is distinguishable, and the inconsistencies presented by the record before us are sufficient to raise a legitimate doubt as to claimant's allegations.

In *Erickson,* the injured employee immediately stopped work, immediately went to the plant hospital, was diagnosed the day following at another hospital to have a ruptured hernia, and explained on redirect examination comments he was alleged to have made to a supervisory employee immediately before the accident about pains in his legs and back prior to the accident. Though hospital records in that case contradicted Erickson's testimony that he had never experienced back pains prior to his work accident, those same records, as well as the WC–16–B reports of three different doctors, all uniformly referred to the accident at work. Though there was some dispute as to whether Erickson had reported his accident to the nurse at the plant hospital, no admissible evidence was received to suggest that he did not, leaving Erickson's testimony unimpeached. While a supervisory employee denied that Erickson had reported the inci-

dent to him just prior to going to the hospital (a denial partially explained by the claimant on rebuttal) it was undisputed that Erickson reported it to him at the very latest during a phone call from the hospital three days after the accident.

Claimant, by contrast, did not stop work but went to lunch and returned to work the balance of the day, went on vacation for two weeks during which he travelled to and from Antigo and flew a plane out of Milwaukee, and did not, according to his own testimony, seek any medical attention despite the fact he was in pain "all the time." Though claimant asserts on this appeal that he saw Dr. Foster the day following the accident, the evidence tending to show that, discussed below, is contradictory and the contradictions are entirely unexplained. The hospital reports dictated by Dr. Foster, to whom claimant said he reported the details of the accident, are silent as to those details and contain no suggestion of any traumatic cause of any of the diagnosed problems.

Dr. Foster's April 27 report repeats the substance of the original report in different language. This suggests that the doctor was not merely repeating in the second report a "mistake" made in dictating the first, but twice omitting details likely to have been included in such reports if known to him at the time of dictation. The reports conflict with the same doctor's WC–16–B report filed almost two years after the alleged incident. They also conflict with claimant's repeated testimony that he had never previously had any pain or difficulty with his left knee, as they refer in some detail to pain and other problems for several months. There is no explanation for these conflicts.

Though claimant alleges that he reported the accident both orally and in writing to his employer, neither the written report nor testimony by the employee to

whom he allegedly made that report was offered. There was no explanation for this omission. The circuit court considered it "much more natural for an employer to call a supervisory employee, such as a motor carrier dispatcher, than a worker's compensation claimant employee," and indicated that claimant was entitled to the benefit of the inference that such witness' testimony would have been unfavorable to the employer, citing *Feldstein v. Harrington,* 4 Wis.2d 380, 388, 90 N.W.2d 566 (1958). That case involved a personal injury action in which defendant failed to call a doctor who had examined plaintifff at defendant's request. This case involves a claimant who testified that corroborating evidence existed to support his claim of injury and failed to produce it. The claimant has the burden of proof, and knew from the pleadings and pretrial proceedings that the employer denied that the alleged incident had occurred.[3] We disagree that it would be more natural for the employer to call the dispatcher than for claimant to do so, even assuming (and the record does not so establish) that the dispatcher was a "supervisory" employee.

"The nonproduction of evidence that would naturally have been produced by an honest and therefore fearless claimant permits the inference that its tenor is unfavorable to the party's cause." 2 Wigmore (3rd ed.), sec. 285, p. 162, *Coney v. Milwaukee & S. T. Corp.,* 8 Wis.2d 520, 527, 99 N.W.2d 713 (1959).

In *Bowen v. Industrial Comm.,* 239 Wis. 306, 1 N.W.2d 77 (1941), a workman's compensation claimant failed

---

[3] Even if the inference had been correctly applied against the employer in this case, it would not have substantially aided claimant's cause. "This inference 'does not operate to relieve the adverse party of the obligation of establishing his case.' *Rudy v. Chicago M., St. P. & P. R. Co.,* 5 Wis.2d 37, 47, 92 N.W.2d 367 (1958)," quoting 1 Jones, *Evidence* (4th ed.), p. 53, sec. 22, and 2 Wigmore, *Evidence* (3rd ed.), p. 179, sec. 290.

to call as a witness a co-employee who had been with him at the time of an alleged work-related accident. That claimant argued on appeal, as this claimant argues here, that since there was no evidence denying his testimony, the commission was bound to accept his allegations as true. The Court upheld the commission's denial of benefits, holding that the commission was not bound to believe the uncontradicted testimony of a party "regardless of its incredibility or other infirmities." 239 Wis. at 312. The Court quoted at length from 1 Wigmore, *Evidence* (2nd ed.), p. 584, sec. 285, as follows:

"The failure to bring before the tribunal some circumstance, document, or witness, when either the party himself or his opponent claims that the facts would thereby be elucidated, serves to indicate, as the most natural inference, that the party fears to do so, and this fear is some evidence that the circumstance or document or witness, if brought, would have exposed facts unfavorable to the party."

The employer contended before the circuit court that the missing witness inference should be applied against claimant for failure to produce the dispatcher. It has not raised this argument on appeal. For this reason, we do not reach this issue, and do not apply the inference against either party.

The corroboration which was offered to support claimant's assertion that an accident occurred are the five WC–16–B reports submitted by Drs. Foster and Buss. As noted above, Dr. Foster's report was dated almost two years after the alleged accident. It contains the first and only reference by him to a work-related injury, and conflicts with his original reports. Though we note claimant's argument that the WC–16–B report is, by statute, "prima facie evidence as to the matter con-

tained therein," sec. 102.17(1)(as), Stats., we do not believe that it is entitled to special weight when the claimant introduced reports closer in time to the claimed accident. In *Revels v. Industrial Comm.,* 36 Wis.2d 395, 401, 153 N.W.2d 637 (1967), the Wisconsin Supreme Court held that the commission was entitled to rely on written statements of a witness close in time to the alleged accident, which were inconsistent with that witness' later testimony, "on the premise that the more recent the event, the fresher and more accurate the memory." The same principle applies here.

Further, though Foster's WC–16–B report contains a reference to X-rays taken on January 29, the day after the alleged injury, the X-rays themselves were not produced. The only other evidence of this office call is found in Exhibit F[4] which is, in part, a photocopy of a bill for services rendered to claimant from January 29 through March 29, 1974, by Dr. Foster's clinic. The bill, which is addressed to claimant's attorney, is undated. Nothing in the record establishes when, or by whom, it was prepared. The other half of this exhibit is a photocopy of the clinic's original ledger cards for services to this claimant from July 30, 1974, through June 9, 1975. This exhibit was apparently introduced to establish the total cost of medical care to claimant. It also establishes that underlying records of service were available to this claimant to support the alleged office call on January 29. There is no explanation in the record for claimant's failure to produce those underlying records or the X-rays.

"Failure to produce what is within one's reach should be considered in determining what weight should be given [a party's] testimony. A party's omission to

---

[4] Neither the circuit court's opinion nor the briefs of either party refer to this significant exhibit.

produce relevant and important evidence of which he has knowledge and which is peculiarly within his control raises the presumption that the evidence would be unfavorable to him. Moreover, *if weaker and less satisfactory evidence is produced by one who might have furnished stronger and more satisfactory proof, that which is received should be viewed with distrust.*" 2 Conrad, *Modern Trial Evidence*, sec. 960, p. 169. (Emphasis supplied.)

The first of Dr. Buss' WC–16–B reports, dated May 8, 1975, leaves blank that portion of the form headed "State in patient's own words the accident . . . to which he attributes the condition for which he saw you." Though his last three reports designate claimant's slip on the ice as causal to the condition requiring the corrective surgery performed by Buss more than a year after the alleged accident, the department is free to disregard opinions and conclusions of medical witnesses based upon statements of the claimant if it does not believe such statements are true. *Davis v. Industrial Comm.*, 22 Wis.2d 674, 126 N.W.2d 611 (1964); *Franckowiak v. Industrial Comm.*, 12 Wis.2d 85, 106 N.W. 2d 51 (1960); *Theisen v. Industrial Comm.*, 8 Wis.2d 144, 153, 98 N.W.2d 446 (1959); *Pressed Steel Tank Co. v. Industrial Comm.*, 255 Wis. 333, 38 N.W.2d 354 (1949). This principle is particularly applicable in this instance, where Dr. Coles disagreed, on purely medical grounds, with Dr. Buss' conclusion that the 1975 "instability" of claimant's knee was caused by the alleged 1974 accident. If there are contradictory medical reports, the department's findings are conclusive. *Tuohy v. Industrial Comm.*, 5 Wis.2d 576, 93 N.W.2d 344 (1958). It is for the examiner to decide if one expert's testimony is more persuasive than another's. *Soper v. Industrial Comm.*, 5 Wis.2d 570, 93 N.W.2d 329 (1958).

In sum, this record reveals inconsistencies within claimant's own testimony, between his testimony and the hospital records introduced to support it; between his attending physician's reports immediately following the alleged accident and the WC–16–B report filed nearly two years later; and, with respect to the second operation, between the opinions of medical experts. In addition, the best evidence available to claimant was not introduced to support his most critical claim on this appeal—a claim contradicted by his own testimony at the hearing—that he went to a doctor the day following the accident. The record thus provides ample basis for the examiner's legitimate doubt of claimant's assertions, and for the dismissal of his claim.

Our decision in this case rests on an exhaustive search of the original record. That search was necessary because the department failed to give reasons for the conclusion that there was not credible evidence to support claimant's allegation. Our burden, and that of the circuit court, would have been considerably eased had the department stated the facts upon which its determination was made. In light of the demands on this court's time, we ask that it do so in future cases.

*By the Court.*—Judgment reversed.