KAELBER PLUMBING & HEATING and Sentry
Insurance, Plaintiffs-Appellants,†

v.

LABOR & INDUSTRY REVIEW COMMISSION,
Buisse Construction Company, Employers Insurance of
Wausau and David S. Macemon, Defendants-
Respondents.

Court of Appeals

*No. 90-1388. Submitted on briefs December 11, 1990.—Decided
January 16, 1991.*

(Also reported in 465 N.W.2d 829.)

† Petition to review denied.

On behalf of plaintiffs-appellants, the cause was submitted on the briefs of *Mark A. Grady* of *Otjen, Van Ert, Stangle, Lieb & Weir, S.C.* of Milwaukee.

On behalf of defendants-respondents, the cause was submitted on the briefs of *Donald J. Hanaway,* attorney general, and *Lowell E. Nass,* assistant attorney general.

Before Nettesheim, P.J., Scott and Anderson, JJ.

ANDERSON, J.  Kaelber Plumbing & Heating and Sentry Insurance (Kaelber) appeal from a circuit court judgment affirming the Labor and Industry Review Commission's (LIRC) determination that Buisse Construction Company and Employers Insurance of Wausau (Buisse) are entitled to reimbursement for worker's compensation benefits paid to David S. Macemon. Kaelber contests LIRC's findings that Macemon was a loaned employee under sec. 102.06, Stats.[1] We reject Kaelber's argument and affirm.

---

[1]Section 102.06, Stats., was amended by sec. 13, 1989 Wis. Act 64. The amended version no longer speaks of a "loaned"

The undisputed facts are that Macemon suffered back injuries when a building collapsed into a trench he was standing in, pushing him into the ground. At the time of the injury Macemon was employed by Buisse. Buisse assigned Macemon to Kaelber to operate a backhoe and perform general laborer duties in conjunction with the installation of sanitary sewer pipe.

Buisse filed a claim for reimbursement from Kaelber of worker's compensation benefits paid to Macemon asserting that Macemon was a loaned employee. The administrative law judge (ALJ) found that Macemon's general employer was Buisse, that Macemon had impliedly consented to work for Kaelber, and that Kaelber exercised control over the details of the work and directly benefited from the work. Based upon these findings the ALJ held that Macemon was a loaned employee under sec. 102.06, Stats., and ordered Kaelber to reimburse Buisse for one week of the temporary total disability benefits that had been paid to Macemon. Other issues of reimbursement were left open pending further hearings. LIRC affirmed the ALJ's findings and order.

Kaelber commenced an action for judicial review in the circuit court arguing that under our recent decision in *Gansch v. Nekoosa Papers, Inc.,* 152 Wis. 2d 666, 449 N.W.2d 307 (Ct. App. 1989) *("Gansch I"),* Macemon was not a loaned employee. The circuit court rejected Kaelber's argument that LIRC improperly applied the law to undisputed facts and confirmed LIRC's order. We agree with the circuit court and affirm its final judgment.

---

employee. However, it applies only to injuries occurring after the amendment's effective date of January 1, 1990. Macemon was injured on January 9, 1987. Unless otherwise indicated, all statutory references in this opinion are to the 1987–88 statute.

■■
The application of a statute to the undisputed facts of this case is a question of law that is independently reviewable by this court. *Applied Plastics, Inc. v. LIRC,* 121 Wis. 2d 271, 276, 359 N.W.2d 168, 171 (Ct. App. 1984). Generally, this court is not bound by the commission's interpretation and application of statutes to facts, *West Bend Educ. Ass'n v. WERC,* 121 Wis. 2d 1, 11, 357 N.W.2d 534, 539 (1984), although we frequently refrain from substituting our interpretation or application for that of the commission. *Id.* at 11–12, 357 N.W.2d at 539. Determination of whether Macemon was a loaned employee calls for a value judgment: how a statutory concept should be applied to undisputed facts, and our review requires us to decide in each case the extent to which we should substitute our judgment for the value judgment made by LIRC. *Nottelson v. DILHR,* 94 Wis. 2d 106, 117, 287 N.W.2d 763, 768 (1980).

> Where a legal question is intertwined with factual determinations or with value or policy determinations or where the agency's interpretation and application of the law is of long standing, a court should defer to the agency which has primary responsibility for determination of fact and policy.

*West Bend Educ. Ass'n,* 121 Wis. 2d at 12, 357 N.W.2d at 539–40 (footnote and citation omitted).

■
Here, we conclude that LIRC has developed significant expertise in determining when an individual is a loaned employee and, therefore, we will give weight and deference to the commission's value judgment. *See Nigbor v. DILHR,* 120 Wis. 2d 375, 383–84, 355 N.W.2d 532, 537 (1984).

> [W]e will defer to the Commission's conclusions if they are reasonable. We do not conduct an ab initio review but rather, determine whether the method utilized by the Commission in reaching its decision was reasonable, even though this court might have reached a different conclusion.

*Id.* at 387–88, 355 N.W.2d at 539.

The decisions applying the test to determine who is a "loaned employee" often have rested on distinctions which are "sometimes slight" and resulted in decisions which are "well-nigh irreconcilable." *Freeman v. Krause Milling Co.*, 43 Wis. 2d 392, 394, 168 N.W.2d 599, 600 (1969). Therefore, it is also in the interest of establishing consistency in this area of the worker's compensation law that we give deference to LIRC's value judgment which is the result of its demonstrated experience, technical competence and specialized knowledge.

In determining that Macemon was a "loaned employee," LIRC applied the tests which the supreme court has set forth to settle disputes in this area:

(1) Did the employee [Macemon] actually or impliedly consent to work for the special employer [Kaelber]?

(2) Was the employee [Macemon] performing the special employer's [Kaelber's] work at the time of the injury?

(3) Did the special employer [Kaelber] have the right to control the details of the work being performed?

(4) Was the work of the employee [Macemon] primarily for the benefit of the special employer [Kaelber]?

*Meka v. Falk Corp.,* 102 Wis. 2d 148, 151, 306 N.W.2d 65, 68 (1981). LIRC applied these tests to the undisputed evidence and concluded that Macemon was a "loaned employee." We cannot quarrel with the commission's conclusion.

(1) Did Macemon actually or impliedly consent to work for Kaelber? Macemon was contacted by the owner of Buisse and asked if he wanted to work for Kaelber at a construction site and Macemon said that he did. This was not a continuation of Macemon's employment with Buisse because Macemon had been laid off for nearly one month and, in fulfillment of the oral contract between Buisse and Kaelber, Buisse provided a backhoe and operator needed by Kaelber to complete a construction contract.

(2) Was Macemon performing Kaelber's work at the time of the injury? Macemon assisted Kaelber in operating the backhoe and as a general laborer in the laying of sanitary sewer pipe. It was work Kaelber was obligated to perform under its contract with a third party.

(3) Did Kaelber have the right to control the details of the work being performed? Macemon was given directions on a daily basis by employees of Kaelber as to where to lay sewer pipe and dig trenches, including the location, direction and depth of the trenches. No one from Buisse was on the job site to tell Macemon how to perform his job.

(4) Was the work of Macemon primarily for the benefit of Kaelber? The work performed by Macemon was primarily for Kaelber's benefit. Kaelber required additional workers and equipment in order to avoid a delay in completion of the project contract.

The conclusion reached by the commission is reasonable and is based on a long-standing interpretation

and application of sec. 102.06, Stats., to undisputed facts. Because we conclude that the decision of LIRC was reasonable, we affirm the judgment of the circuit court.

*Gansch I* was recently reversed. *Gansch v. Nekoosa Papers, Inc.,* 158 Wis. 2d 743, 463 N.W.2d 682 (1990) *("Gansch II").* In *Gansch II,* the supreme court held that the statutory definition of a "temporary help agency," sec. 102.01(2)(f), Stats.,[2] was applicable to determining the loaned employee issue:

> The temporary help agency amendments were enacted in 1981, following this court's decision in *Meka v. Falk Corp.,* 102 Wis. 2d 148, 306 N.W.2d 65 (1981), in which the court once again criticized the four-part loaned employee test the court had developed fifty years earlier in *Seaman Body Corp. v. Industrial Comm.,* 204 Wis. 157, 163, 235 N.W. 433 (1931). The four-part *Seaman* test has been used to determine whether a borrowing employer and loaned employee have an employer-employee relation so that the loaned employee may not maintain a tort action against the borrowing employer . . ..
>
> The *Seaman* test was unsatisfactory because its requirements were too manipulable, allowing litigation to flourish as employers, employees, and the

[2]Section 102.01, Stats. (1987–88), reads in material part:

**Definitions.**

. . ..

(2)  In this chapter:

. . ..

(f)  "Temporary help agency" means an employer who places its employe with another employer who controls the employe's work activities and compensates the first employer for the employe's services.

courts have expended time and resources on suits turning on the loaned employee issue.

We perceive the statutory provisions on temporary help agencies, secs. 102.29(6) and 102.01(2)(f), as a legislative response to *Meka* and the prior cases that point out the inadequacies of the four-part *Seaman* test. The [Worker's Compensation] Advisory Council and legislature apparently sought to simplify the determination of whether a temporary employee injured in the workplace may maintain a tort action against the temporary employer.

*Gansch II,* 158 Wis. 2d at 750, 751–52, 463 N.W.2d at 685 (footnote omitted).

■

The simplified determination of the loaned employee issue, provided by sec. 102.01(2)(f), Stats., is applicable to the question raised in this case: whether Kaelber, the borrowing employer, is liable for paying worker's compensation for Macemon, the loaned employee. In order for Buisse to be entitled to reimbursement from Kaelber, Buisse must be a "temporary help agency" as defined in sec. 102.01(2)(f).[3] A "temporary help agency" has the following characteristics: (1) An employer who places its employee with a second employer; (2) the second employer controls the employee's work activities;[4] and (3) the second employer compensates the first employer for the employee's

---

[3]The provision of sec. 102.06, Stats., that the general employer is entitled to compensation of worker's compensation benefits from the borrowing or special employer was not changed by the addition of "temporary help agency" language to ch. 102, Stats.

[4]It is no longer necessary that the borrowing or special employer have exclusive control over the details of the loaned employee's work activities; all that is needed is that the special

services.[5]

Buisse is an employer who placed Macemon, its employee, with Kaelber. Kaelber compensated Buisse for Macemon's services. The undisputed facts and inferences in this case, discussed earlier, require us to conclude that Kaelber controlled Macemon's work activities while he was on the job site.

On the basis of these facts and findings, we conclude that whether the now-abandoned *Seaman* four-part test or the statutory definition of a "temporary help agency" described in *Gansch II* is applied to the facts in this case, the decision of the commission was correct.

*By the Court.*—Judgment affirmed.

___

employer have some control over the work activities. *See Gansch II*, 158 Wis. 2d at 753, 463 N.W.2d at 686.

[5]This definition eliminates three parts of the loaned employee test: (1) Whether the employee consented to work for the special employer? (2) Whose work was the loaned employee performing? (3) Was the work performed for the benefit of the special employer? *Gansch II*, 158 Wis. 2d at 752 n.10, 463 N.W.2d at 686.