GTC AUTO PARTS and American Mutual Insurance Co.,
Plaintiffs-Appellants,†

v.

LABOR & INDUSTRY REVIEW COMMISSION and James S.
Bartosh, Defendants-Respondents.

Court of Appeals

*No. 92–3184. Submitted on briefs May 3, 1993.—Decided June
29, 1993.*

(Also reported in 503 N.W.2d 363.)

†Petition to review filed.

On behalf of defendants-respondents, the cause was submitted on the briefs of *James B. Doyle,* attorney general, and *Stephen M. Sobota,* assistant attorney general of Madison.

On behalf of plaintiffs-appellants, the cause was submitted on the brief of *Michael C. Frohman* of *Kasdorf, Lewis & Swietlik, S.C.* of Milwaukee.

Before Cane, P.J., LaRocque and Myse, JJ.

LaROCQUE, J.   GTC Auto Parts and its insurer, American Mutual Insurance Company (collectively, GTC), appeal the decision and order of the Labor and Industry Review Commission upheld upon review by the circuit court. GTC maintains that LIRC exceeded its authority when it ordered temporary total disability payments for an indefinite future period to its former employee, James Bartosh. GTC also contests LIRC's finding that it waived a right to claim credit for overpayment of benefits for a nine-month period in 1989. We affirm.

Bartosh, employed as an auto machinist, was injured in April 1988 while lifting an engine block. He felt pain in his right leg but continued to work for a period of time. His condition deteriorated, and he sought medical treatment, was subsequently hospitalized, placed in traction and received physical therapy

131

and a CT scan. An orthopedist determined that Bartosh had sustained a herniated disc and performed a diskectomy. The operation was not successful, and Bartosh experienced increasing lower back pain. He underwent physical therapy, but was unable to do the recommended exercises. An MRI revealed that Bartosh suffered abnormalities both above and below the area of his disc surgery, with accompanying complications. After a "work hardening" program did not alleviate the pain, he sought a second medical opinion regarding the advisability of further surgery. A specialist at the University of Minnesota Hospitals Low Back Center recommended a three-level spinal fusion.

GTC hired a vocational consultant, who assisted Bartosh in an attempt to secure a job within the physical restrictions set by Bartosh' physician. Despite a "fairly extensive job hunt" over a period of three months, he received no offers. Bartosh underwent a vocational evaluation at the University of Wisconsin-Stout that recommended retraining over a period of years. This recommendation was supported by GTC's vocational expert, but GTC "was not interested in funding the program" and terminated the services of its consultant.

In August 1989, Bartosh sought assistance from the Wisconsin Department of Vocational Rehabilitation to become self-employed as a cabinetmaker and furniture builder. With the DVR's assistance and the approval of his physician, Bartosh began this work in the spring of 1990. Within a short time, however, Bartosh experienced severe back pain and intermittent leg pain. Bartosh gradually scaled back his work time, and his physician concluded that he was "disabled from gainful employment" in June 1990.

132

Bartosh underwent another MRI and a discography to determine his condition. His doctor advised that Bartosh could "live with the pain" or have a three-level fusion with no guarantee that the operation would allow him to return to work, and only a 25% chance of improvement.

The administrative law judge found that neither Bartosh nor GTC had established that the disability was permanent. He therefore denied Bartosh' claim for permanent total disability and GTC's request for an order for permanent partial disability. LIRC approved the ALJ's decision, as well as the conditions by which the issue of permanency will be determined. LIRC found that GTC is "not interested in funding applicant's retraining," that "applicant preferred to return to self-employment" and that he was "clearly open to vocational training." LIRC's memo opinion also states:

> Despite this, the fact that a vocational evaluation done at the University of Wisconsin-Stout indicated that applicant had very strong potential in many areas for retraining, and the efforts of respondents' own vocational consultant, respondents made absolutely no commitments and did absolutely nothing to support applicant's vocational efforts once a sixty to ninety day search for a job, without additional training, had failed.

LIRC's order approving the ALJ's decision provides that (1) if GTC does not offer funds for retraining as recommended by the various experts and Bartosh elects not to have surgery so that his condition remains unchanged, he will remain on temporary total disability indefinitely; (2) if GTC offers the funding and Bartosh declines to participate without medical reason, the skills that he could have acquired will be imputed

to him and the order modified accordingly; or (3) if GTC offers the funding and Bartosh is physically unable to participate, LIRC will declare him permanently totally disabled.

GTC contends that because under the Worker's Compensation Act temporary total disability is payable only until the end of the healing period, sec. 102.44(3), Stats., LIRC has exceeded its authority by approving such payments for an indefinite period without regard to the healing period. GTC challenges LIRC's reliance upon *Knobbe v. Industrial Comm'n*, 208 Wis. 185, 242 N.W. 501 (1932), as support for its decision. We may give weight and deference to LIRC's value judgments regarding the application of a statute to the facts of a case. *Kaelber Plumbing & Htg. v. LIRC*, 160 Wis. 2d 342, 347, 465 N.W.2d 829, 831 (Ct. App. 1991). We will defer to LIRC's conclusions if they are reasonable. *Id.* at 348, 465 N.W.2d at 831. We do not conduct an ab initio review but, rather, determine whether the method used in reaching the decision was reasonable, even if this court might have reached a different conclusion. *Id.*

*Knobbe* approved a commission award of temporary total disability rather than a permanent partial disability where there was a likelihood of a future amputation of the claimant's leg:

> The healing period is understood to mean, and is generally construed by the Industrial Commission as meaning, the period prior to the time when the condition becomes stationary. This requires the postponement of the fixing of the permanent partial disability to the time that it becomes apparent that the leg will get no better or no worse because of the injury. The healing period is expected to be tempo-

134

rary, during it the employee is submitting to treatment, is convalescing, still suffering from his injury, and unable to work because of the accident. The interval may continue until the employee is restored so far as the permanent character of his injuries will permit.

*Id.* at 189–90, 242 N.W. at 503.

GTC does not directly challenge LIRC's authority to require it to provide retraining funds. Rather, it argues that *Knobbe* contemplates that the healing period should be determined by the employee's medical condition and not upon contingencies such as established by the order in this case. We do not read *Knobbe* so narrowly. We conclude that vocational retraining may bear upon the issue of when an employee is "restored so far as the permanent character of his injuries will permit." *Id.* at 190, 242 N.W. at 503. There is no reason to read *Knobbe* to prevent LIRC from conditioning a finding of permanency upon the willingness of an employee to attempt, and the willingness of the employer to provide, vocational retraining. We agree with the state's contention that the provisions of the Act from the outset have been accorded a liberal construction in favor of compensation for workers' injuries. *See Kiel v. Industrial Comm'n*, 163 Wis. 441, 158 N.W. 68 (1916).

GTC argues that *Knobbe* can be distinguished because the commission order provided that the employer could "examine the condition of the respondent as developments occur . . . ." *Id.* at 190, 242 N.W. at 503. We do not construe the order in this case as

denying the employer the right to reexamination.[1] We therefore conclude that Bartosh is within the healing period until such times as GTC determines to avail itself of the remedies imposed by the order.

GTC also appeals LIRC's order denying its claim for overpayment of benefits at the temporary total disability rate from March 10 to December 4, 1989. The ALJ indicated at the outset of the hearing that there was a dispute whether GTC and Bartosh had agreed to the payment of temporary total disability rates as long as Bartosh cooperated in job placement and other efforts of GTC's vocational expert.

At the hearing, Bartosh testified that there was such an agreement. GTC offered no evidence to contradict his claim. LIRC's memo opinion indicates that it held a credibility conference with the ALJ who accorded great weight to Bartosh's testimony. LIRC also indicated that GTC attempted to submit proofs on the issue after the hearing, but that it was prevented from considering on review any evidence not considered by the ALJ, citing *Northwestern Insulation v. LIRC*, 147 Wis. 2d 72, 432 N.W.2d 620 (Ct. App. 1988). We uphold LIRC's decision upholding Bartosh's claim that the parties agreed to the temporary total disability rate for the months indicated.

*By the Court.*—Order affirmed.

---

[1] The issue of reexamination did not arise at the hearing, presumably because both parties contended that Bartosh's condition was permanent.