Donna F. CONRADT, Plaintiff-Appellant,

v.

MT. CARMEL SCHOOL, Fireman's Fund Insurance Company and Labor and Industry Review Commission, Defendants-Respondents.

Court of Appeals

*No. 94–2842. Submitted on briefs August 22, 1995.—Decided September 27, 1995.*

(Also reported in 539 N.W.2d 713.)

On behalf of the plaintiff-appellant, the cause was submitted on the briefs of *Walter W. Stern* of Union Grove.

On behalf of the defendants-respondents, Mt. Carmel School and Fireman's Fund Insurance Company, the cause was submitted on the brief of *Andrew J. Quartaro* of *Peterson, Johnson & Murray, S.C.* of Milwaukee.

On behalf of the defendants-respondents, Labor and Industry Review Commission, the cause was submitted on the brief of *James E. Doyle*, attorney general, and *Lowell E. Nass*, assistant attorney general.

Before Anderson, P.J., Brown and Snyder, JJ.

BROWN, J.   Donna F. Conradt is a former school teacher who unsuccessfully claimed before administrative tribunals and the trial court that she had a workplace sensitivity entitling her to worker's compensation. We address all of the issues she raises, but two stand out. The first is whether Wisconsin should join those states giving more weight to a treating physician's testimony than a nontreating physician's. The second is whether we should require a credibility conference between the administrative law judge (ALJ) and the Labor and Industry Review Commission (LIRC) whenever credibility is a substantial element of the case, even where LIRC affirms the ALJ. We hold that Wisconsin law rejects the "treating physician rule" and also rejects the *requirement* of a credibility conference when there is an affirmance. We decide the other issues against Conradt as well and affirm in total.

Conradt claimed before the ALJ that she was forced to retire from her position as a grade school teacher for Mt. Carmel School, a parochial elementary school, on February 2, 1990, because of allergy problems and multichemical sensitivities caused by the workplace. She averred that the carpeting of her classroom smelled of mold, musk and dampness as a result of ongoing leaks in the roof occurring between 1978 and November 1, 1987, when repairs were completed. She asserted that during this period, exposure to mold from

the carpeting caused an allergic reaction to her lungs, throat, ears and sinuses and that it caused headaches.

Conradt further asserted that even after the roof was repaired, she continued to experience problems, even though she moved to a different classroom in August 1989. She complained that the chemical air fresheners placed throughout the building, carpet freshener placed in all of the carpeting and fragrance cakes placed in the bathroom only exacerbated her problems. She also claimed that the roof continued to leak despite the repairs.

She testified that in 1988 and 1989, she went to her general practice physician because of these symptoms and that this physician treated her with antibiotics. She testified further that she then decided to go to an allergist, Dr. G. Botka-Wunder, who treated her in 1989 and 1990. Then, because Conradt believed that she was receiving too much medication and yet was not getting relief, she thereafter began seeing Dr. Robert T. Marshall, a clinical ecologist who, after testing, prescribed antigens that she was to insert under her tongue. During her treatment with Marshall, she still did not feel that she was getting better and therefore sought a "second opinion" from Dr. Theron Randolph, another clinical ecologist. She went to Randolph on one occasion.

Conradt submitted a WC-16-B form completed by Marshall. By means of that form, Marshall opined that Conradt had a multichemical sensitivity disability. He defined this as a disorder where there are below toxic levels of different chemicals that, when added together, create a negative physical reaction which eventually may break down the immune system.

Conradt also submitted a WC-16-B form of Randolph. Randolph concurred with Marshall that

Conradt's symptoms were due to the work exposure at Mt. Carmel School because of multichemical sensitivity. He opined that Conradt was 100 % disabled.

In addition to the opinions of Marshall and Randolph, Conradt also submitted a WC-16-B form of Botka-Wunder, whom she described as a "classic" allergist as opposed to Marshall and Randolph who were practitioners of "clinical ecology." Botka-Wunder corroborated the work-related nature of Conradt's exposure to various substances at work which, she opined, aggravated Conradt's preexisting sinus infections. She further opined that mold and fragrance in the air at work created multiple chronic upper respiratory problems and significant reactions with mold antigens and respiratory bacteria antigens.

Mt. Carmel offered the opinion of Dr. Jordan Fink, a professor of medicine and chief of the allergy-immunology division of the Medical College of Wisconsin. Fink discounted clinical ecology as a legitimate medical field. He further testified that he examined Conradt and tested her for antibodies. The tests were unremarkable. Additional tests were also found to be within normal limits. He also reviewed her medical history. He concluded that Conradt's condition was not allergy related and there was no work-related injury or disability.

Fink also commented on the symptoms that Conradt reported while working at Mt. Carmel. He said that, at some point in time, Conradt may possibly have had a condition called "mucosal irritation syndrome," otherwise known as "sick building syndrome." He indicated that it is entirely possible that her symptoms were related to the roof leaks "at the time she worked in the building." He testified, however, that this is not the same as an allergic reaction. He further stated that

the condition is not disabling or permanent and that if the building is fixed, the condition goes away.

Mt. Carmel also presented documentary evidence to support its position that after the roof of the building was repaired, no further problems resulted. It submitted a report by the Kenosha County Department of Public Health dated January 19, 1990. The report indicated that the department inspected the school and took air samples on January 18 and 19, 1990, two years after completion of the roof repairs. The inspection revealed no problems with the air quality. Mt. Carmel also submitted a report from the Occupational Safety and Health Administration (OSHA) regarding an inspection of the school on February 13, 1990. While other violations of OSHA were found, the report did not indicate any potential exposure to harmful substances.

The ALJ found for Mt. Carmel. The ALJ stated in pertinent part as follows:

> Based upon the record made at the hearing, I find the applicant's testimony of exposure to molds, chemicals and other conditions in an alleged "sick building syndrome" to be so far removed in time as to lack sufficient credibility to meet her credible and substantial evidence burden under the Worker's Compensation Act. I further find that the opinions of Dr. Fink regarding the applicant's condition to be more credible and adopt the same.

Conradt then appealed to LIRC, which adopted the findings of the ALJ. In doing so, however, LIRC phrased Conradt's theory as one of multiple chemical sensitivity rather than "sick building syndrome." Also, LIRC explained that it understood the ALJ's use of the phrase "so far removed in time" to mean that Conradt's "exposure to molds through a leaking roof ended a con-

siderable time prior to the hearing and to her treatment with Drs. Marshall and Randolph." Additionally, LIRC did not specifically find that Conradt may have at one time had a workplace-related disability, ending when the building was repaired. Rather, LIRC simply wrote that it was not convinced that her work environment caused her to sustain any injury. Conradt appealed to the circuit court, which upheld LIRC. She now brings this appeal.

Conradt first argues that this state should adopt a rule that treating physicians be accorded special credibility. This rule, which she asserts is applied in a majority of states, is based upon the rationale that a treating physician has had nonlitigation-type contact with the patient. Therefore, the treating physician's diagnosis is usually not litigation related. On the other hand, an independent medical examiner hired by an employer or the employer's insurance company gives an opinion that is solely litigation related. Therefore, the reasoning goes, the administrative agency should not be allowed to disregard a treating physician's opinion in favor of the one time examiner without good and substantial grounds. One commentator has described the rule as follows:

> The attending physician's testimony should be given more weight than that of a doctor who has not examined the claimant for purposes of treatment, and testimony of a specialist in the particular field should be given more weight than that of a general practitioner.

3 ARTHUR LARSON, THE LAW OF WORKMEN'S COMPENSATION § 80.24(b) (1992) (footnotes omitted).

Conradt acknowledges cases, including *Manitowoc County v. DILHR,* 88 Wis. 2d 430, 437, 276 N.W.2d 755,

758 (1979), which state that LIRC is the "sole judge of the weight and credibility" of medical witnesses. But she argues that the *Manitowoc* case is not irreconcilable with the "treating physician rule." She argues that LIRC's authority to decide the credibility of witnesses would not be abrogated. Rather, "the Commission would simply need to suggest a reason, some evidence as to why the rule would not be applied in the individual case." She contends there is no case or statute prohibiting the adoption of the "treating physician rule" and posits instead that invocation of the "treating physician rule" would further Wisconsin's tradition of liberal application of the law in favor of the working person. Finally, Conradt asserts that "[t]he only way to prevent total domination of worker's compensation by the insurance industry is the acceptance of the 'treating physician rule,' which incorporates a specialization principle."

We cannot accept Conradt's claim that *Manitowoc* and the "treating physician rule" are compatible. The *Manitowoc* rule is, after all, simply an appellate restatement of the statutes. Section 102.23(1), STATS., says that the findings of fact made by LIRC are, in the absence of fraud, conclusive. Further, § 102.23(6) says in pertinent part:

> If the commission's order or award depends on any fact found by the commission, the court shall not substitute its judgment for that of the commission as to the weight or credibility of the evidence *on any finding of fact*. [Emphasis added.]

Thus, when the *Manitowoc* court wrote that LIRC is the sole judge of the weight and credibility of medical witnesses, it was following the intent of the legislature to give LIRC that power. And that power, which

applies to *any* finding of fact, is in no way limited, except where the factual finding is laced with evidence of fraud.

Another indication of legislative intent is found in the language of § 102.17(1)(d), STATS. This statute says that expert opinions in the form of a WC-16-B provided by the claimant are prima facie evidence as to the matters contained in it. However, the term "prima facie evidence" is not to be confused with "presumptive evidence" which, in reality, is what the "treating physician rule" intends to accomplish. Thus, by illustration, even if a claimant offers a WC-16-B and there is no contradictory evidence presented, LIRC may still reject the expert opinion if it does not believe it to be true. *Bumpas v. DILHR,* 85 Wis. 2d 805, 817, 271 N.W.2d 142, 147 (Ct. App. 1978), *aff'd,* 95 Wis. 2d 334, 290 N.W.2d 504 (1980). And, if there are contradictory medical reports, it is for LIRC to decide if one expert's testimony is more persuasive than another's. *Id.* We conclude that this statute enforces the idea that LIRC determines the weight to be given medical witnesses.

Further, Conradt misrepresents the state of the law when she claims that a majority of states have adopted the "treating physician rule." Our research reveals that only Louisiana and Oregon follow the rule to the extent of creating a presumption. *See Guidry v. Picadilly Cafeterias, Inc.,* 657 So. 2d 325, 327 (La. Ct. App. 1995); *Agricpac, Inc. v. Beem,* 880 P.2d 966 (Or. Ct. App. 1994). A handful of states allow *trial courts* to give greater deference to the testimony of an attending physician, yet without creating a presumption that this is so. *See, e.g., Guy v. Breeko Corp.,* 832 S.W.2d 816 (Ark.) (Per Curiam), *cert. denied,* 113 S. Ct. 377 (1992);

*Snyder v. San Francisco Feed & Grain*, 748 P.2d 924, 931 (Mont. 1987).

Significantly, none of these states have statutory schemes similar to Wisconsin's, which gives deference to LIRC on findings of fact and forbids courts from substituting their judgment for that of LIRC. In fact, states having statutory schemes similar to Wisconsin's are more numerous, as are the decisions declining to adopt the "treating physician rule." *See, e.g., Old Ben Coal Co. v. Industrial Comm'n*, 576 N.E.2d 890 (Ill. App. Ct. 1991); *Gibson v. City of Lincoln*, 376 N.W.2d 785 (Neb. 1985); *Lehigh County Vo-Tech School v. Workmen's Compensation Appeal Bd.*, 652 A.2d 797 (Pa. 1995).

Finally, we reject Conradt's assertion that adoption of this rule is the only way to prevent wholesale domination of worker's compensation cases by the insurance industry. We are unaware of anything to suggest that such a statement is true. Rather, a review of published decisions of our supreme court and this court indicates that LIRC has, over the years, assessed the credibility of medical witnesses in an even-handed manner on a case-by-case basis. The statutory scheme shows that the legislature has placed its faith in LIRC to make the credibility determinations. Nothing shows that the faith placed in LIRC has been abused. We hold that the invocation of the "treating physician rule" is not only contrary to our statutory scheme, it is also unnecessary.

The other claim of Conradt meriting immediate mention is her assertion that LIRC should have conducted a credibility conference with the ALJ before handing down its decision. She argues that a confer-

ence was particularly necessary in this case because of what she terms the "ambiguous and unclear language" of the ALJ's use of the phrase "so far removed in time." The fact that LIRC found it important to provide its understanding of what the language meant enforces her concern.

Conradt acknowledges case law saying that the credibility conference requirement is necessary whenever LIRC overrules an ALJ's credibility determination. But Conradt claims that the requirement has not been limited to these situations. She cites *Shawley v. Industrial Comm'n,* 16 Wis. 2d 535, 114 N.W.2d 872 (1962); *Falke v. Industrial Comm'n,* 17 Wis. 2d 289, 116 N.W.2d 125 (1962); *Braun v. Industrial Comm'n,* 36 Wis. 2d 48, 153 N.W.2d 81 (1967); *Burton v. DILHR,* 43 Wis. 2d 218, 168 N.W.2d 196 (1969); and *GTC Auto Parts v. LIRC,* 178 Wis. 2d 129, 503 N.W.2d 363 (Ct. App. 1993), *rev'd on other grounds,* 184 Wis. 2d 450, 516 N.W.2d 393 (1994).

In particular, Conradt cites the language in *Falke* that a credibility conference is required concerning the impressions of credibility or where the witness credibility "is a substantial element of the case." *Falke,* 17 Wis. 2d at 295, 116 N.W.2d at 128. She cites *Braun* to say that where witnesses have directly contradicted each other, the impression of the factfinder and the demeanor of the witnesses demand that a credibility conference be held. And she cites *Shawley* for the proposition that a credibility conference is required even when there is an eventual affirmance of the ALJ's decision. She also claims that in *GTC Auto Parts*, this court assumed, without discussion, that a credibility conference was required even when the ALJ's opinion was affirmed.

71

Conradt contends that a credibility conference was necessary here because the ALJ somehow assumed that after the roof was repaired in 1987, the cause of her claimed allergic reactions was thereafter eradicated. However, Conradt claims that it was uncontradicted at the hearing that, even after the roof was fixed, it still leaked. She also contends that apart from the leaky roof, there were other problems, such as "stick-ups" and industrial fluids and fumes, which emanated from the workplace to Conradt's detriment. Conradt asserts that it was therefore important for LIRC to have the ALJ's impressions as to credibility because such a conference would have allowed LIRC to ask the ALJ whether Conradt demonstrated physical symptoms at the hearing showing that her problems continued even after the roof was fixed. Conradt argues that the conference should have been conducted as a matter of law and fundamental fairness.

We disagree with Conradt's understanding of the case law regarding credibility conferences. *Braun, Falke* and *Burton* all involved instances where LIRC reversed the examiner's credibility findings. The language contained in those cases all connected the credibility conference with the reversal. Those cases cannot serve as support for Conradt's contention.

Regarding *Shawley*, it is true that LIRC eventually affirmed the examiner. However, *Shawley* must be limited to its facts. There, two hearings were held in the matter and medical testimony was taken from several physicians. The examiner from the first hearing died, leaving only his notes summarizing the medical testimony but giving no credibility impressions. The supreme court was concerned about the due process implications of deciding a claim without the impressions of the first examiner being on file. *See id.*, 16 Wis.

2d at 537-39, 114 N.W.2d at 873-74. Certainly, *Shawley* presents such a unique situation that it cannot be cited for the proposition that Conradt claims.

Finally, regarding *GTC Auto Parts*, it is true that LIRC affirmed an ALJ's decision and it is also true, as mentioned by the court, that LIRC "held a credibility conference with the ALJ." But this court made the statement only as part of its factual iteration. *See id.*, 178 Wis. 2d at 136, 503 N.W.2d at 366. We were not stating that such a conference was necessary. We never broached the issue. Harmonizing *GTC Auto Parts* with other case law, we conclude that while LIRC may have a credibility conference with an ALJ at any time in its discretion, it is only *required* to do so as a condition precedent to overruling the ALJ.

Not only is Conradt wrong on the law, she is wrong on the facts. And that brings us to the next issue. She argues that all expert testimony supported her claim of work-related injury. She argues that even Fink, Mt. Carmel's expert, admitted under oath that Conradt would be 100 % disabled during the time that adverse environmental conditions were present at the school, a condition that Fink termed as "sick building syndrome." She claims it to be "uncontradicted" that the conditions continued even after the roof was fixed; so at the very least, the "sick building syndrome" continued to affect her up to the time of retirement.

But the evidence is not "uncontradicted." Documentary evidence shows that both the Kenosha Department of Public Health and OSHA inspected the school after the roof was repaired. No environmental problems were noted. LIRC is entitled to draw a reasonable inference from this evidence that the problems did not continue. *See Neese v. State Medical Soc'y*, 36

Wis. 2d 497, 503, 153 N.W.2d 552, 555 (1967). Moreover, Fink reviewed the reports of both the Kenosha Department of Public Health and OSHA. He testified that he knew of no explanation as to why Conradt would currently have symptoms other than some psychiatric explanations. LIRC accepted Fink's testimony that Conradt's condition was not allergy related and there was no work-related injury or disability. This articulated basis is conclusive.

Further, it is the role of this court to review the record and locate credible and substantial evidence supporting LIRC's determination. *Vande Zande v. DILHR,* 70 Wis. 2d 1086, 1097, 236 N.W.2d 255, 260 (1975). Our review of the record reveals that, quite apart from Conradt's claim that the *building* caused her problems, it was more her reactions to the general environment of this earth that caused her problems. For example, she testified that she was bothered in the hearing room, is bothered by people wearing deodorant, is bothered by cleansing fluids, was bothered by sixth and seventh grade students using perfume, is bothered in a restaurant, is bothered in her husband's place of business, is bothered when it is summertime because it becomes moldy at home, is also sometimes bothered in the home when visitors come and is bothered by fabric softener. On top of this, Conradt is bothered by smoke, but admits that she was a smoker until five months before the hearing, and even then admitted "to a puff of a cigarette here and there." We conclude that there exists credible and substantial evidence for LIRC to be unconvinced that her work environment caused her to sustain an injury.

■

Correlatively, we also reject Conradt's argument that LIRC's interpretation of the ALJ's phrase "so far removed in time" was so ambiguous that it is impossible for LIRC to have construed the phrase without "having some kind of conference with the administrative law judge to determine what was meant." The phrase is simply unambiguous. We think a reasonable person would read the phrase to mean that to the extent Conradt may have had a workplace-related reaction, it ended with the repairs and any further problems she experienced were not workplace related.

■

Next, Conradt complains that she was denied due process of law because the ALJ "refused" to allow her husband to testify about the "causal connection" between the conditions at Mt. Carmel and the effect of those conditions on her health. However, that is not what happened at the hearing. Conradt's counsel offered the husband's testimony to "corroborate the fact that when she takes antigens and goes somewhere, she doesn't feel better until she gets back home again." Thus, the husband's testimony was offered not as evidence of "cause," but as evidence as to her general state of health. As we have cited above, Conradt already testified on that score to a substantial extent. The evidence offered was cumulative and that was the ruling of the ALJ. No error occurred.

■

Finally, Conradt asserts that we should review the trial court's decision and remand it for further determination because the circuit court would not address issues such as alleged due process violations, the lack of clarity in LIRC's decision or the lack of a credibility conference. However, this court reviews the decision of

LIRC, not the trial court. *See C.W. Transp., Inc. v. LIRC,* 128 Wis. 2d 520, 525, 383 N.W.2d 921, 923 (Ct. App. 1986). If a claimant believes that the trial court has missed some issues, the claimant can make that assertion to this court. In our discretion, we can remand to the trial court to address those issues before we review the case or we can do it on our own. Here, we have addressed and rejected each of Conradt's arguments. We affirm.

*By the Court.*—Judgment affirmed.